YPSILANTI FIRE MARSHAL v KIRCHER (ON RECONSIDERATION)
BARNES v KIRCHER (ON RECONSIDERATION)

Docket Nos. 260970, 260971, 260972, 260973. Submitted October 10, 2006, at Detroit. Decided January 9, 2007, at 9:00 a.m.

The city of Ypsilanti and the Ypsilanti Fire Marshal brought actions in the Washtenaw Circuit Court to compel David Kircher to bring two properties he owned into compliance with various state and local regulations, a goal the plaintiffs have been pursuing through litigation for nearly 20 years. Ultimately, both buildings were repaired—one by a court-appointed receiver, the other by an agent of the city—and sold at sheriff's sales after the trial court foreclosed on the liens it had imposed on the properties in the event that Kircher failed to pay the repair costs. Kircher has now appealed various orders that the trial court, Donald E. Shelton, J., issued on remand after the Court of Appeals, in an unpublished opinion, instructed it to define the scope of the receiver's duties in accordance with the original purpose of the receivership and to require court approval before incurring additional repair costs for either building. The Court of Appeals consolidated Docket Nos. 260970 and 260971, which relate to the property known as the Thompson Building, with Docket Nos. 260972 and 260973, which relate to an apartment building. The Court of Appeals, BORRELLO, P.J., and JANSEN and COOPER, JJ., issued an opinion on November 2, 2006, that it vacated upon reconsidering the matter.

On reconsideration, the Court of Appeals *held*:

1. The trial court had jurisdiction to entertain Ypsilanti's nuisance abatement actions despite the fact that the suits were filed by a local fire marshal rather than the state fire marshal, because the state fire marshal has the statutory authority to delegate enforcement responsibilities to qualified individuals.

2. The trial court improperly delegated the power to appoint a receiver to the city of Ypsilanti; however, any error was cured by the trial court's subsequent ratification by order of Ypsilanti's appointment.

3. The trial court orders appointing a receiver and a successor receiver need not be set aside on the ground that the trial court initially failed to require the posting of a receiver's bond as

mandated by law. The trial court eventually required the posting of bonds, albeit belatedly, leaving no lasting error requiring relief.

4. The trial court's receivership order constituted an abuse of discretion because the trial court failed to comply with this Court's remand order to provide for judicial supervision and oversight of the receiver's activities and expenditures. Although the trial court held evidentiary hearings regarding the receiver's expenditures, they were held only after the expenditures were incurred, and they resulted in the approval of nearly all the expenditures without any analysis of why each cost was incurred. On remand, the trial court must indicate whether each cost was incurred to abate a violation of the Fire Prevention Code or a local ordinance, and, if the latter, the specific ordinance under which each repair and expense was authorized.

5. Because the trial court approved nearly all the repairs made to both buildings only after the fact, Kircher had no opportunity to contest the costs before they were incurred, and the trial court did not indicate which costs were necessary to properly abate nuisances, making complete appellate review with respect to the lien amounts nearly impossible. Accordingly, a remand is necessary for a determination of the proper lien amounts. On remand, the trial court must specify which costs were incurred to abate violations of the Fire Prevention Code, MCL 29.1 *et seq.*; which costs were incurred to abate city ordinance violations; and which costs were incurred for other reasons, such as to make the property economically viable. The trial court must then recalculate the lien amounts to include only those costs incurred to abate violations of the Fire Prevention Code. Although the costs of abating municipal ordinance violations are not collectible through foreclosure proceedings, the circuit court has the authority to abate nuisances at the expense of the property owner, and the resulting costs may be collected in the same manner as debts are generally collected on execution. Accordingly, on remand, the trial court must impound the surplus remaining after subtracting the newly calculated lien amounts from the original lien amounts and use it to satisfy the necessary expenses incurred to properly abate violations of city building and fire codes. The trial court should then return any remaining amount to Kircher.

6. The trial court abused its discretion by failing to terminate the receivership when the successor receiver, Stuart Beal, purchased the Thompson Building at a sheriff's sale, because Beal was fully aware that further repairs of the building would be necessary and was able to effectuate those repairs without the assistance of

a court-appointed receiver. On remand, the trial court must enter an order terminating the receivership as of the date of the sheriff's sale.

7. The trial court had jurisdiction to amend its initial judgment of foreclosure after the claims of appeal were filed because trial courts retain jurisdiction if they are holding property for conservation or management unless the Court of Appeals orders otherwise.

8. Arguments relating to the receiver's compensation and the attorney-fee award are barred by the law of the case doctrine and have not been properly presented for appeal.

9. The trial court properly dismissed Kircher's counterclaim because it contained only conclusory assertions unsupported by factual allegations.

10. The law of the case doctrine did not bar the trial court's finding that Ypsilanti was entitled to proceed with other nuisance-abatement projects at the apartment building beyond the five repairs that were originally enumerated, nor did the trial court clearly err in determining that Ypsilanti had the authority to abate municipal ordinance violations at the apartment building. The 178 code violations alleged by Ypsilanti were included in the original complaint, and were therefore within the original contemplation of the parties.

11. The trial court abused its discretion by failing to terminate Ypsilanti's authority to possess and repair the apartment building at the time of the sheriff's sale to Ypsilanti's agent, who was fully aware when he purchased the property that further repairs were necessary to abate municipal-code violations, and was able to effectuate these repairs without assistance from the city or the court. Accordingly, on remand, the trial court shall enter an order terminating Ypsilanti's authority over the apartment building as of the date of the sheriff's sale, leaving all costs incurred by Ypsilanti or its contractors beyond that date as the sole responsibility of the new owner.

12. Kircher's arguments regarding costs and fees were not raised in the statement of questions presented and, thus, were not properly presented for review.

13. Reassignment to a different judge is unnecessary because there was no showing that the trial judge was prejudiced or biased, and reassignment would waste time and resources.

Affirmed in part, vacated in part, and remanded for further proceedings.

1. Statutes — Fire Prevention Code — Delegation of Authority.

A local fire marshal may bring an action under the Fire Prevention Code if the state fire marshal has properly delegated the authority to do so (MCL 29.2b[1], 29.23).

2. Nuisance — Abatement — Municipalities — Costs.

Municipalities do not have the statutory authority to impose liens for the cost of general nuisance abatements under city ordinances.

3. Liens — Courts — Real Property — Authority.

Courts may not create or impose liens on real property absent an express agreement by the parties or other legal authority.

4. Appeal — Courts — Jurisdiction — Supervision of Property.

In general, trial courts may not amend judgments that have been appealed; however, trial courts retain jurisdiction in cases in which they are holding property for conservation or management unless the Court of Appeals orders otherwise (MCR 7.208[D]).

5. Judges — Disqualification.

The fact that a judge ruled against a litigant, even if the ruling is determined to be erroneous, is not sufficient to require the disqualification or reassignment of that judge.

*Jesse O'Jack,* Assistant Ypsilanti City Attorney, for the Ypsilanti Fire Marshal and city of Ypsilanti.

*Roberts & Freatman* (by *Ellis B. Freatman, III*), for Robert C. Barnes.

*George E. Ward* for David Kircher.

ON RECONSIDERATION

Before: Borrello, P.J., and Jansen and Cooper, JJ.

Jansen, J. These consolidated appeals are yet another step in the protracted litigation between property owner David Kircher and the city of Ypsilanti, the Ypsilanti fire marshal, and former court-appointed receiver Robert C. Barnes (collectively referred to as

Ypsilanti). In Docket Nos. 260970 and 260971, Kircher appeals as of right the trial court's judgment of foreclosure regarding his property located at 400-412 River Street, which is known as the Thompson Building.[1] In Docket Nos. 260972 and 260973, Kircher appeals as of right the trial court's separate judgment of foreclosure regarding his apartment building at 510 West Cross Street.[2] In Docket Nos. 260970 and 260971, we affirm in part, vacate in part, and remand for further proceedings. In Docket Nos. 260972 and 260973, we also affirm in part, vacate in part, and remand for further proceedings.

---

[1] In Docket Nos. 260970 and 260971, Kircher also purports to appeal as of right certain separate orders pertaining to the Thompson Building, entered in Washtenaw Circuit Court Case No. 02-000434-CH. The claim of appeal in Docket Nos. 260970 and 260971 identified only the February 4, 2005, judgment of foreclosure, entered in Washtenaw Circuit Court Case No. 03-001380-CH, as the final order being appealed. However, when a party claims an appeal from a final order, it may raise on appeal all issues related to other orders entered in the case. *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992). Because Washtenaw Circuit Case Nos. 02-000434-CH and 03-001380-CH involved the same subject matter and common questions of fact, the cases could have been consolidated by the trial court. MCR 2.505(A)(2). Therefore, we will consider Kircher's claims concerning Washtenaw Circuit Case No. 02-000434-CH, even though no order from that case was specifically mentioned in the claim of appeal.

[2] In Docket Nos. 260972 and 260973, Kircher also purports to appeal as of right certain separate orders pertaining to the apartment building entered in Washtenaw Circuit Court Case No. 01-000560-CH. The claim of appeal in Docket Nos. 260972 and 260973 identified only the February 4, 2005, judgment of foreclosure, entered in Washtenaw Circuit Court Case No. 03-001264-CH, as the final order being appealed. However, when a party claims an appeal from a final order, it may raise on appeal all issues related to other orders entered in the case. *Bonner, supra* at 472. Because Washtenaw Circuit Case Nos. 01-000560-CH and 03-001264-CH involved the same subject matter and common questions of fact, the cases could have been consolidated by the trial court. MCR 2.505(A)(2). Therefore, we will consider Kircher's claims concerning Washtenaw Circuit Case No. 01-000560-CH, even though no order from that case was specifically mentioned in the claim of appeal.

## I. BASIC FACTS AND PROCEDURAL HISTORY

### A. THE THOMPSON BUILDING

These consolidated appeals have their genesis in a series of disputes between Kircher and Ypsilanti, which began in the late 1980s. Ypsilanti had previously filed Washtenaw Circuit Case Nos. 86-031555-CC and 94-002933-CZ to compel Kircher to make certain repairs and abate certain building-code and fire-code violations at the Thompson Building. These actions resulted in the entry of an agreed-upon order between the parties on May 22, 1996, in which Ypsilanti's building supervisor was appointed receiver for the Thompson Building "for the purposes of bringing the exterior of the building into compliance with the building ordinances and the Historic District ordinance." The order dealt primarily with brickwork and façade repairs, roof repairs, and window and doorway repairs. The order provided that the Ypsilanti building supervisor "shall designate David Kircher as the contractor" to perform the specified repairs "so long as Mr. Kircher performs such duties in a timely fashion and according to" applicable Ypsilanti ordinances. In the event that Kircher failed to adhere to the order, the receiver was given the authority to replace him as contractor, as well as to take certain other actions to effectuate completion of the work. The order provided that all costs of repairs, replacements, and other work were to be paid by Kircher. The order specified that in the event Kircher failed to pay, "a lien shall be imposed upon the property which shall be collectible through property taxes."

At some point, it became apparent that Kircher had not complied with the May 22, 1996, order. A second agreed-upon order was therefore entered by Washtenaw Circuit Judge Donald Shelton on July 14, 1997, direct-

ing Kircher to submit bids for the work listed in the prior agreed-upon order, to submit applications for grants or other funding, and to "begin work on the building to complete the repairs and improvements listed in the May 22, 1996 order within 120 days." The July 14, 1997, order was the final order entered in Washtenaw Circuit Case Nos. 86-031555-CC and 94-002933-CZ.

On April 10, 2002, Ypsilanti filed a complaint and commenced Washtenaw Circuit Case No. 02-000434-CH, alleging that the Thompson Building was in violation of the state Fire Prevention Code, MCL 29.1 *et seq.*, and certain local building and fire codes. The complaint asserted that Kircher had failed to comply with the May 22, 1996, and July 14, 1997, orders, and sought an order to show cause why a new receiver should not be appointed to complete the work required by the prior orders. As this Court previously explained in *Ypsilanti Fire Marshal v Kircher*, unpublished opinion per curiam of the Court of Appeals, issued April 27, 2004 (Docket Nos. 242697 and 242857), slip op at 2:

> The trial court [then] entered an order to show cause why it should not order (1) that a receiver be appointed, (2) that a preliminary injunction and temporary restraining order be entered, and (3) that the receiver take care of the property with costs to [Kircher] and liens against the property. At the show cause hearing, . . . Jon Ichesco [the Ypsilanti fire marshal] testified that he procured a survey after receiving complaints about the building. He relied on an engineer's report that listed the repairs needed to make the building safe. Specifically, Ichesco discussed problems with the roof, the need for tuckpointing, and windowpanes falling into the street. [Kircher] offered only his own testimony about what he thought was required and what he did to repair the building. On cross-examination, [Kircher] asserted that it "would have been impossible" for

him to complete the repairs listed in the July 14, 1997, order because he had not received the grant money referred to in a May 22, 1996, order.

The trial court found:

"[Kircher] has not complied with the [c]ourt's May [22], 1996 order, or the July 14, 1997 order. Furthermore, I'm going to specifically find that the building is in dangerous condition and is a nuisance."

The trial court entered an order appointing Robert Barnes as receiver. The order further provided:

"IT IS FURTHER ORDERED that the Receiver needs to make the building economically viable."

The trial court's order appointing Barnes as the receiver for the Thompson Building and authorizing Barnes to complete all necessary repairs was entered in Washtenaw Circuit Case No. 02-000434-CH on June 14, 2002. The order provided that the receiver was to maintain detailed records of the costs expended in repairing Kircher's property, that the receiver was to bill Kircher monthly for these costs, that Kircher was to pay all billed costs within 30 days, and that the receiver would have a lien on the property at the conclusion of the repairs for any costs Kircher had not paid. The order also provided that Kircher was to pay Ypsilanti's attorney fees incurred in conjunction with the enforcement and supervision of the order.

In Docket Nos. 242697 and 242857, Kircher appealed the trial court's June 14, 2002, order, asserting among other things that the trial court lacked jurisdiction to appoint a receiver and that the trial court's order allowed the receiver to undertake and charge defendant unlimited amounts of money for unspecified repairs. In an opinion issued on April 27, 2004, this Court determined that the trial court did have jurisdiction to appoint the receiver pursuant to MCL 29.23. However,

this Court agreed with Kircher that the order appointing the receiver was overbroad:

> By giving the receiver the authority to make the Thompson building "economically viable," the order allows the receiver to make repairs beyond removing the hazards of which plaintiffs originally complained. [Ypsilanti's] reliance on the fire code does not support its argument that the broad scope of the order is appropriate. The quoted portion of the fire code only addresses hazards that endanger human life. It does not address the "economic viability" of the building. Accordingly, we reverse that portion of the June 14, 2002, order providing "that the Receiver needs to make the building economically viable and functional."

> On remand, the trial court shall enter an order that more precisely defines the receiver's duties. The listed repairs shall be in keeping with the reasons that the receivership was sought, i.e., to repair the building so that it is no longer a hazard to human life, and also in keeping with the trial court's finding that:

> "[Kircher] has not complied with the [c]ourt's May [22], 1996 order, or the July 14, 1997 order. Furthermore, I'm going to specifically find that the building is in dangerous condition and is a nuisance."

> The trial court's order must also comply with the provisions of MCL 600.2926 which provides: "In all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law." [*Ypsilanti Fire Marshal, supra*, slip op at 5-6.]

Kircher also argued that the that trial court awarded too much compensation to the receiver and that the trial court erred in awarding Ypsilanti its attorney fees. This Court rejected those arguments. *Id.* at 6-7.

Despite this Court's determination that the trial court had jurisdiction to appoint the receiver, Kircher filed a subsequent unsuccessful motion to dismiss for lack of subject-matter jurisdiction. On May 19, 2004,

the receiver filed a motion for summary disposition relating to the recovery of the costs of repairs performed to date. Kircher then filed a cross-motion to terminate the receivership. The trial court took these motions under advisement, reserving its ruling until after the conclusion of an evidentiary hearing.

On July 22, 2004, the trial court held an evidentiary hearing to determine the reasonableness of the repairs to the Thompson Building. At the beginning of that hearing, the trial court expressed its opinion that the hearing would "satisfy" this Court's remand instructions. Counsel for the receiver agreed, but counsel for Kircher disagreed. Kircher's counsel noted that this Court had directed the trial court on remand to enter an order more precisely defining the receiver's duties in accordance with the original purpose of the receivership—to repair the building so that it was no longer a hazard to human life—and to provide for payment of a bond. Counsel for Kircher continued:

> I respectfully submit, Your Honor, that we first ought to do what the Court [of Appeals] said. Specify what were the fire hazards that existed back in 2001 with specificity that justified the continuation of this action. Then we'd like to go in and see the property. Mr. Kircher has not been on that property for three years. We . . . aren't ready for an evidentiary hearing without ever seeing whether they actually did what they said they were going to do. So, I think we have to take this in steps. We have to do what the Court of Appeals first told us to do, then we have to have an opportunity to discover whether the fire hazards as listed in the revised order occurred. I think we also have to have evidence that Mr. Barnes [the receiver] has posted a bond. And, then we can, hopefully you'll let us in there to see the property. What's happened in the last three years. And we can then be prepared to respond intelligently to the revised order that's resulted from the remand.

The trial court heard testimony from the receiver's son, Robert M. Barnes (Barnes, Jr.), regarding the nature, extent, reason for, and cost of work performed on the Thompson Building. The court also heard from a licensed architect regarding her review of the building and her opinion concerning the reasonableness of certain repairs. Barnes, Jr., was cross-examined extensively by Kircher's counsel regarding the purpose and nature of the repairs. Kircher then gave his opinion regarding the condition of the building and advised the court that the building had a working sprinkler system. He also offered a structural-engineering report for the building. At the conclusion of the testimony, the trial court asked the parties to submit their closing arguments in writing.

On January 19, 2005, the trial court issued its opinion and order granting the receiver's motion for summary disposition and denying Kircher's cross-motion to terminate the receivership. The court noted that this Court had affirmed the prior order appointing the receiver, "with the exception of reversal as to the part which provided the receiver with the authority to make [the Thompson Building] 'economically viable.' " The trial court continued:

The Court of Appeals in its [opinion] dated April 27, 2004, remanded the cases and directed this [c]ourt to define the receiver's duties as to the Thompson Building. The duties could only include the authority to make repairs in keeping with the reason the receivership was sought which was to repair the building so that it was (1) no longer a hazard to human life (2) in compliance with the May 22, 1996 order and all subsequent orders and (3) no longer a danger or nuisance.

The trial court then found that the receiver was entitled to summary disposition, noting that the receiver had been properly appointed, that repairs had been made,

that Kircher had been provided with invoices and given the opportunity to pay, and that Kircher had failed to pay. The trial court found that

> all repairs were within the parameters of the ruling from the Court of Appeals. The testimony from the [r]eceiver was that repairs were made to remove any danger to human life, to correct code violations, to eliminate any nuisances and to bring the property into compliance with the May 22, 1996 order. There were no repairs solely made to make the building "economically viable." Furthermore, the [r]eceiver provided credible testimony as to the costs and the necessity of the repairs.

The trial court also allowed fees for engineering work performed in conjunction with the repairs, as well as a portion of architect fees incurred by the receiver. The trial court disallowed certain architect fees that were "incurred in creating a plan to make the building 'economically viable.' " The trial court entered a lien against the Thompson Building in the amount of $187,686.38.

Meanwhile, on December 11, 2003, Barnes had commenced Washtenaw Circuit Case No. 03-001380-CH by filing a complaint to foreclose the lien against the Thompson Building property. On February 4, 2005, the trial court entered a judgment of foreclosure, ordering the sheriff to sell the Thompson Building.

On February 16, 2005, Ypsilanti and Barnes filed a joint motion for the appointment of a successor receiver, because Barnes wished to step down from his duties. Kircher opposed the appointment of a successor receiver, asserting that the trial court had never complied with this Court's remand instructions by entering an order more precisely defining the receiver's duties or by providing for a bond. Further, Kircher asserted that there was no showing that the grounds for the appoint-

ment of a receiver continued to exist. Kircher argued that there was no need for a successor receiver, and noted that further appeals were pending before this Court.[3]

The trial court held a hearing on the motion on March 16, 2005. At that hearing, Kircher reiterated his position that there were no grounds to justify the appointment of a successor receiver. Counsel for Kircher stated:

> Your Honor, three years ago, the city came to Your Honor, cited the Fire Prevention Code, and on the basis of convincing Your Honor that there was a hazardous condition there of—that was very grave, of a fire nature. You appointed a receiver. That's three years ago.
>
> That case was brought by the City of Ypsilanti. There was an appeal as you recall. Mr. Kircher didn't believe this was a case for receivership. He thought the legal remedies were adequate. And, Your Honor's order simply says, make the building economically viable.
>
> The Court of Appeals reversed on that issue and said, the [c]ourt has to specify what repairs are necessary. That still has never been done.
>
> I am submitting, Your Honor, that if [Barnes] doesn't want to be the receiver anymore that's fine. But, there is no allegation that there's any kind of nuisance over there that's a menace to the people now.
>
> * * *
>
> [The city has] not described any conditions there that would even remotely justify the harsh and extraordinary remedy of receivership.
>
> I ask Your Honor—we don't care if Barnes quits. That's fine. But, we don't want a successor receiver appointed

---

[3] Kircher filed his claims of appeal in the present consolidated cases on February 22, 2005.

unless grounds are shown that brings this case within equity that would justify it. And we submit there are no grounds.

Certainly they're not saying that imminent danger that existed three years ago still exists. There is no imminent danger. The legal remedies are adequate now.

* * *

Your Honor, the long and short of it is there is not one thing before Your Honor to show that today . . . [t]here is anything there that would justify the . . . invocation of the harsh and extraordinary remedy of receivership.

The trial court did not address these assertions, instead merely inquiring whether there were any objections to the particular party nominated by Ypsilanti as successor. Counsel for Kircher raised several objections. Without further comment, the trial court then concluded that it would appoint the nominated entity as successor receiver. The following exchange concluded the hearing:

*Mr. Ward [Kircher's counsel]*: Your Honor, the other thing is, may I remind you, on April 27, the Court [of Appeals] remanded with instructions that this Court more precisely define—

*The Court*: I heard what you said about that. What you said is not true, but that's alright. You've made your point on the record, thank you.

The trial court entered an order appointing Stuart Beal as the successor receiver on March 21, 2005. Barnes then apparently assigned his interest in the Thompson Building judgment of foreclosure to Beal or Beal's father.

On April 20, 2005, Kircher filed in this Court an original action seeking a writ of superintending control. Kircher alleged that the trial court had "repeatedly

failed and refused to comply with the Court of Appeals' mandate and to enter the amendatory orders that [it] was directed to enter." Kircher further alleged: "To make matters worse, after granting the [r]eceiver a judgment of foreclosure of lien . . . the [t]rial [c]ourt appointed a [s]uccessor [r]eceiver . . . without any showing by the City of Ypsilanti of present hazardous conditions within MCL 29.23 which would justify a successor receiver." Kircher asserted that despite his objection to the appointment of the successor receiver, "the [t]rial [c]ourt simply refused to 'more precisely define the receiver's duties,' or to require a receiver's bond" as mandated by this Court's April 27, 2004, remand instructions in the prior appeal. Thus, Kircher asked this Court for a writ of superintending control to enforce the earlier remand instructions and direct Judge Donald E. Shelton (1) to issue an order more precisely defining the receiver's duties in keeping with the reasons that the receivership was originally sought and (2) to provide for the payment of a bond.

In response to Kircher's complaint for superintending control, Judge Shelton denied that he refused to comply with this Court's remand instructions, and asserted that his January 19, 2005, order complied fully with this Court's April 27, 2004, decision.

On June 3, 2005, this Court granted the complaint for superintending control and directed the parties to "proceed to a full hearing on the merits in the same manner as an appeal of right." Judge Shelton filed a response, indicating that he had "attempted to comply and felt that [he] had complied" with this Court's April 27, 2004, remand instructions, and that he would "follow any directives" from this Court in the future. On July 12, 2005, the trial court finally entered two *nunc pro tunc* orders amending its prior orders to

require the original receiver and successor receiver each to post a bond in the amount of $500.

On March 9, 2006, this Court issued an opinion dismissing the writ of superintending control as improvidently granted. *In re Kircher*, unpublished opinion per curiam of the Court of Appeals, issued March 9, 2006 (Docket No. 262153). This Court noted that Kircher had filed appeals in Docket Nos. 260970 and 260971, which remained pending. In light of Kircher's alternate avenue of relief by way of the pending appeals in Docket Nos. 260970 and 260971, this Court concluded that the extraordinary remedy of superintending control was not justified.

A sheriff's sale was held on May 11, 2006, and successor receiver Beal purchased the Thompson Building for $346,186.39.[4]

## B. THE APARTMENT BUILDING

On May 14, 2001, Ypsilanti commenced Washtenaw Circuit Case No. 01-000560-CH by filing a complaint asserting that Kircher's apartment building at 510 West Cross Street was in violation of the state Fire Prevention Code and certain local building and fire codes. Ypsilanti contended that the alleged violations rendered the apartment building unsafe and a nuisance. As this Court explained in *Ypsilanti Fire Marshal, supra*, slip op at 3-4,

> The trial court [then] entered an order to show cause why it should not order the property vacated and declared

---

[4] The amount of the lien had increased substantially beyond $187,686.38 by the time of the sheriff's sale. Between the date of the judgment of foreclosure and the date of the sheriff's sale, the trial court amended the judgment of foreclosure, significantly increasing the amount of the lien to $346,186.39.

a nuisance and order [Kircher] to immediately comply with all applicable ordinances. It later entered another order providing:

"1. That parties are to complete a list of repairs to be made to the property and that any dispute with regard to that list will be resolved at an evidentiary hearing scheduled for August 16, 2001 at 2:00 p.m.

"2. The property is to be vacated immediately.

"3. [Kircher] shall have 90 days from the date of the evidentiary hearing to effectuate all of the repairs."

After the show cause hearing, the trial court entered an order that "materials, equipment and devices" could not be reused unless approved by the fire marshal, that [Kircher] obtain permits and inspections as repairs are made, that the city can make surprise inspections, that a certificate of occupancy be obtained and that the parties would try to resolve as many items as possible. A "Table of Repairs" was attached identifying 224 repairs.[5]

[Ypsilanti] filed a motion for immediate vacation of the premises and sought an order for contempt in which they argued that [Kircher] continued to occupy the building, had not yet obtained a certificate of occupancy and violated the court's previous orders. In response, the trial court entered an order to vacate the premises which also required a certificate of occupancy before further occupation and inspections.

At a subsequent evidentiary hearing, [Ypsilanti's] attorney and [Kircher] simply spoke on the record. [Ypsilanti] asserted that the parties were attempting to resolve the issues, but would litigate anything that was not resolved. [Ypsilanti] also indicated on the record that the parties agreed that [Kircher] would make repairs subject to a determination of workmanship by Harry Hutchinson, head of the city's building department. [Kircher] did not object.

---

[5] The repairs identified in the "Table of Repairs" were based on alleged violations of city building and fire codes, rather than on alleged violations of the state Fire Prevention Code.

The trial court entered an order stating that [Kircher] had ten days to make repairs. It further provided that city officials could inspect the building twenty-one days from entry of the order and that workmanship would be determined by Hutchinson. Code violations were to be presented to the court for review. On November 27, 2001, the parties stipulated to entry of an order providing that several repairs "shall be undertaken immediately to bring this property into compliance."

At another show cause hearing, [Ypsilanti's] counsel argued that because [Kircher] failed to comply with the trial court's previous orders, a receiver should be appointed to effect the repairs. [Kircher] asserted that some of the repairs were made and [then] discussed the particulars of his interaction with [Ypsilanti]. [Kircher] indicated that he made all the repairs ordered, but that [Ypsilanti had] not given him a certificate of occupancy. The trial court withheld its decision on [Ypsilanti's] motion to appoint a receiver until after an evidentiary hearing.

At that hearing, Hutchinson testified that the November 9, 2001, order indicated that all determinations of workmanship shall be made by him. Since the order was entered, Hutchinson had been to the property and was not pleased with the workmanship of the repairs. Ichesco [the Ypsilanti fire marshal] testified about the repairs that were listed in the complaint and subsequent orders. In particular, he testified that the condition of the chimney posed threats of collapse and carbon monoxide poisoning. [Kircher] testified about the repairs that he made and discussed his occupancy problems. The trial court entered an order giving the city the exclusive responsibility and right to make the repairs listed in the order.

Judge Shelton entered the order in Washtenaw Circuit Case No. 01-000560-CH on June 14, 2002. It authorized Ypsilanti to complete five particular repairs of the apartment building, specifically, the garage, the roof, the second-floor deck, the stairwell between apartment numbers three and four, and the building's chimney. Ypsilanti was given the authority to employ Barnes

or any other contractor to complete the enumerated repairs and to "bring this property into compliance." The order provided that all costs were to be paid by Kircher. The order directed Ypsilanti or its contractors to send Kircher regular invoices for the expense of all repairs, and specified that in the event Kircher failed to pay, Ypsilanti would have a lien on the apartment building, which would be subject to foreclosure. The order also provided that Kircher would be liable for any necessary attorney fees and costs incurred by Ypsilanti or its contractors.[6]

On November 21, 2002, Ypsilanti contracted with Barnes and his company, Barnes & Barnes, to perform the repairs to the apartment building as required by the trial court's June 14, 2002, order. As Ypsilanti's exclusive contractor,[7] Barnes completed work at the apartment building and submitted invoices totaling $54,376.74. Following an evidentiary hearing, the trial court entered an April 8, 2003, order directing Kircher to pay $54,376.74 within 30 days. The order provided that if Kircher paid the full amount, Ypsilanti's right to occupy and repair the apartment building would be terminated and the building would be fully returned to Kircher. If Kircher failed to pay the amount due within 30 days, Ypsilanti would remain in possession of the apartment building and would be authorized to expend money to make further repairs necessary to bring the building into compliance with local building and fire ordinances. Finally, the order barred Kircher from being physically present at the apartment building

---

[6] Kircher filed a claim of appeal of the June 14, 2002, order in this Court on July 22, 2002.

[7] Although Barnes was not appointed receiver of the apartment building, as he had been with respect to the Thompson Building, Kircher argues that Barnes acted as a "de facto receiver" of the apartment building under the contract with Ypsilanti.

"without the City Building Inspector and a representative of [Ypsilanti's] agent, Robert C. Barnes, being present also."[8]

Kircher did not pay the $54,376.74 due under the trial court's April 8, 2003, order. On November 14, 2003, Barnes commenced Washtenaw Circuit Case No. 03-001264-CH by filing a complaint to foreclose on the lien against the apartment building. Barnes asserted that the $54,376.74 due under the April 8, 2003, order had not been paid, and that interest was accruing at a rate of seven percent. Barnes also contended that several additional repairs had been performed at the apartment building since April 8, 2003, and that the total amount due was now $95,559.50. Barnes submitted an affidavit in which he averred that $95,559.50 worth of repairs had been performed at the apartment building, that Kircher had been sent timely invoices in this amount, and that this amount had not been paid. Kircher answered the complaint for foreclosure and filed a counterclaim, asserting that he had been damaged by the allegedly wrongful dispossession of his apartment building.

On December 17, 2003, Ypsilanti and Barnes filed a "Joint Motion for specific repairs and/or renovations" in Washtenaw Circuit Case No. 01-000560-CH. Ypsilanti and Barnes asserted in the motion that Kircher had never paid the amount due under the trial court's April 8, 2003, order. Accordingly, Ypsilanti and Barnes sought permission to remain in possession of the apartment building and to perform additional renovations to bring the building into compliance with Ypsilanti fire and

---

[8] Kircher filed a claim of appeal of the April 8, 2003, order in this Court on May 12, 2003. This claim of appeal was dismissed by this Court because the April 8, 2003, order was "a postjudgment order that is not appealable as a matter of right."

building codes. Specifically, Ypsilanti and Barnes asserted that although the building was configured as a five-unit apartment complex, they should be permitted to completely "reconfigure the property into a . . . unit for use by a fraternity or sorority."

On February 11, 2004, the trial court held a hearing on the motion. Counsel for Barnes & Barnes stated that Barnes had demolished the interior of the apartment building and had discovered "hundreds" of defects that were in need of repair in order to bring the building into compliance with Ypsilanti city codes. Counsel continued:

> [Barnes & Barnes] would like to convert it to a fraternity house. There's a demand for that and they've been approached for it.
>
> Paragraph five of your [April 8, 2003,] order basically says that [Barnes & Barnes] can bring the building up to code and make commercially reasonable arrangements to rent the premises.
>
> We probably can do it without your permission, but we would like to err on the side of caution here and ask the [c]ourt to—to allow us to make this—this renovation.

Counsel for Ypsilanti concurred with Barnes, and joined in the request to reconfigure the apartment building as a fraternity or sorority house.

Kircher's attorney noted that Ypsilanti and Barnes had already spent more money than the originally approved amount of $54,376.74, and raised the question whether the trial court intended to allow them to expend an unlimited amount of money on the apartment building. The following exchange then occurred:

> *Mr. Ward [Kircher's counsel]*: Well, Your Honor, all I'm saying is you gave them a lien [in the amount of $54,376.74]. If they needed to get the [$54,376.74], why didn't they foreclose their lien when it was at [$54,376.74?]

* * *

*The Court*: Why didn't Mr. Kircher—if it's so valuable, pay the 54 to get his property back?

*Mr. Ward*: Well, Your Honor, all I'm saying—at that point he wasn't able to see the property, and two wrongs don't make a right.

Kircher further explained that he had been unable to obtain financing in the amount of $54,376.74 at the time.

The trial court then commented from the bench, all the while referring to Barnes as "the receiver," despite the fact that no receivership order had ever been entered regarding the apartment building:

> What's being asked for today is to convert the property in to something that is, in the view of the receiver and probably in the view of the city, economically feasible. But, that's not the function of the [c]ourt. It isn't the function of the [c]ourt to make property in to something that's economically feasible for one purpose or another. That's the function of the owner of the property, whoever that turns out—whoever that turns out to be.
>
> They—it may be a good idea to make this in to a fraternity/sorority house, but that's not my role here, to decide whether it's a good idea or a bad idea, or whether that's the—the best approach from an economic viewpoint. It's not the [c]ourt's role to authorize or make—to authorize that sort of reconfiguration or make that sort of decision.
>
> I think what has to happen here is that we now need to proceed to collect the funds that have been expended to repair this building. We've been unable to collect them because Mr. Kircher's been unwilling to pay them, and so now we are in a—in an action where the property will be foreclosed upon, it will be sold if that action prevails. And, then the highest bidder can then decide whether they want a fraternity house or a warehouse or whatever fits with

code and whatever that owner decides is economically feasible for the property. That's not what I'm charged with here.

This was an action in part, at least, to abate a nuisance, and that's as far as the [c]ourt is going to extend its authority at this point.

I'm going to deny the motion to reconfigure as presently stated .... And, we will proceed with all dispatch on the—on the foreclosure action.

On February 23, 2004, the trial court entered an order effectuating its ruling from the bench and denying the motion to reconfigure the apartment building into a fraternity or sorority house.

On March 31, 2004, Barnes filed a motion for summary disposition in the foreclosure action, seeking the trial court's determination of the current amount of the lien. He contended that Kircher had failed to pay the $54,376.74 due under the April 8, 2003 order, and that Kircher had also failed to pay for any of the repairs or renovations that had been performed since that time. Barnes also asserted that Kircher's counterclaim was insufficient to state a claim on which relief could be granted because Kircher had set forth no facts in support of the claim. Moreover, Barnes argued that he was entitled to governmental immunity on Kircher's counterclaim because he had been acting at all relevant times as an agent of the city of Ypsilanti. Barnes requested that the trial court determine the current amount owed by Kircher and enter a lien in that amount against the apartment building.

Kircher answered Barnes's motion and filed a cross-motion for summary disposition on his counterclaim. Kircher contended that it was beyond dispute that he had been injured by Ypsilanti's and Barnes's actions. Kircher asserted that Barnes had exceeded his author-

ity as Ypsilanti's contractor, and had "gutted" the entire inside of the apartment building. Moreover, Kircher asserted that he did not owe the amounts claimed by Barnes, particularly those costs incurred after the April 8, 2003, trial court order.

On May 6, 2004, the trial court entered an order granting summary disposition for Barnes pursuant to MCR 2.116(C)(10) and dismissing Kircher's counter-claim pursuant to, among other things, MCR 2.116(C)(8). The court found that there was no question of fact that Kircher owed money to Barnes for necessary repairs to the apartment building and indicated that it would determine the exact amount at a later time.

Meanwhile, in Docket Nos. 242697 and 242857, Kircher had appealed the trial court's June 14, 2002, order entered in Washtenaw Circuit Case No. 01-000560-CH. Kircher argued, as he did with respect to the order entered in Washtenaw Circuit Case No. 02-000434-CH, that the order was overbroad and conferred on Ypsilanti unlimited authority to make repairs and incur expenses. In the April 27, 2004, opinion, this Court disagreed with Kircher, concluding that the June 14, 2002, order concerning the apartment building was narrower in scope than the June 14, 2002, order affecting the Thompson Building:

> Defendant also argues, as he did [with respect to the Thompson Building], that the order does not put sufficient restraints on the city. But the order appealed in this case is significantly different from that in the case [of the Thompson Building]. First, in this case, neither Barnes nor the city was appointed receiver. Instead, the trial court granted the city the exclusive right to repair the building and fire code violations. The order merely permits the city to employ Barnes or other entities to accomplish this task. Additionally, the order is more specific with respect to the repairs to be completed. It lists the repairs that "shall be

undertaken by the Plaintiff to bring this property into compliance." Accordingly, the trial court imposed sufficient restraints on the city. [*Ypsilanti Fire Marshal, supra*, slip op at 8.]

However, as in the case of the Thompson Building, this Court determined that the trial court's June 14, 2002, order did not sufficiently provide for proper judicial oversight and preapproval of the expenses incurred in abating Fire Prevention Code and municipal code violations at the apartment building, stating, "In light of the harsh consequences of [Kircher's] failure to pay, the order must provide that charges to [Kircher] shall be reviewed by the trial court to determine whether they are appropriate and reasonable before [Kircher] is required to pay." *Id.*

On remand, the trial court held an evidentiary hearing to determine the current amount Kircher owed for repairs to the apartment building. Barnes, Jr., testified that Barnes & Barnes had initially received directions to proceed only with the five specific repairs listed in the trial court's June 14, 2002, order. He testified that Barnes & Barnes completed these repairs and submitted invoices to Kircher, but that Kircher never paid. Barnes, Jr., testified that after these five initial repairs, Barnes & Barnes determined that additional repairs were necessary, moved forward with these repairs, and billed Kircher for the additional repair costs. Whereas the original five repairs had been related to the abatement of alleged Fire Prevention Code violations, Barnes, Jr., indicated that the additional repairs were completed to bring the apartment building into compliance with Ypsilanti city ordinances and to make the building economically viable. He indicated that although the trial court had denied the request to convert the property into a fraternity or sorority house, the additional work done by Barnes & Barnes was intended

to facilitate modification of the property into a fraternity or sorority house in the future in the event that Barnes ultimately received ownership of the building. He also testified that Barnes & Barnes had never asked the trial court for permission to go beyond the five specific repairs listed in the trial court's June 14, 2002, order, and conceded that Kircher had never received an opportunity to contest or object to any of these additional repairs and modifications. However, a licensed architect testified that she believed all repairs and modifications to the apartment building had been reasonable and appropriate.

Kircher testified that following the initial five repairs listed in the trial court's June 14, 2002, order, he had not been able to arrange for financing to pay the $54,000 owed to Barnes & Barnes. Kircher also testified that he believed the original five repairs could have been performed at a lower cost by another contractor. Kircher informed the court that approximately one month after Judge Shelton had denied Barnes's request to reconfigure the building into a fraternity or sorority house, Barnes had sought from Ypsilanti a special use permit to allow conversion of the apartment building into a fraternity or sorority house.

The trial court entered its final order in Washtenaw Circuit Case No. 01-000560-CH on January 19, 2005. The court determined that its original June 14, 2002, order had included not only the authority to make the five listed repairs pursuant to the Fire Prevention Code, but also the authority to abate violations of Ypsilanti's local building and fire codes. The trial court found that $54,376.74 had come due on April 8, 2003, for the original five listed repairs, and that $163,926.58 had been properly expended since that date. The trial court

found that all of these costs were necessary and reasonable, and that Kircher therefore owed $218,303.32.

On February 4, 2005, the trial court entered a judgment of foreclosure in Washtenaw Circuit Case No. 03-001264-CH. The trial court found that a lien had attached to the apartment building in the amount of $218,303.32, and ordered the property sold. At the sheriff's sale, Barnes purchased the apartment building for $244,535.09. Kircher objected to the judgment of foreclosure and sheriff's sale, alleging that statutorily prescribed procedures were not followed. Nonetheless, on July 6, 2005, the trial court entered an order confirming the sale to Barnes and finding that the sheriff's sale of the apartment building had been "regular in all respects."

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Questions of statutory interpretation are likewise reviewed de novo. *Ayar v Foodland Distributors*, 472 Mich 713, 715-716; 698 NW2d 875 (2005). Clear and unambiguous statutory language is given its plain meaning and is enforced as written. *Id.* at 716.

Whether the law of the case doctrine applies is a question of law, which we review de novo. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). The law of the case doctrine provides that, when an appellate court has made a ruling on a legal question and remanded the case for further proceedings, the legal question thus determined will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. *In re Cummin Estate*, 267 Mich App 700, 704; 706 NW2d 34 (2005),

rev'd in part on other grounds 474 Mich 1117 (2006). The law of the case applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000).

Foreclosure actions are equitable in nature. *Mitchell v Dahlberg*, 215 Mich App 718, 726; 547 NW2d 74 (1996). We review de novo a trial court's equitable decisions. *Id.* at 727. However, we review the findings of fact supporting those decisions for clear error. *Id.*

We review for an abuse of discretion the trial court's decision to appoint a receiver. *McBride v Wayne Circuit Judge*, 250 Mich 1, 4; 229 NW 493 (1930); *Band v Livonia Assoc*, 176 Mich App 95, 104; 439 NW2d 285 (1989); *Wayne Co Jail Inmates v Wayne Co Chief Executive Officer*, 178 Mich App 634, 658-659; 444 NW2d 549 (1989). "The appointment of a receiver may be appropriate when other approaches have failed to bring about compliance with the court's orders." *Band*, *supra* at 105. We similarly review for an abuse of discretion a trial court's decision to discharge a receiver and to terminate the receivership. *Singer v Goff*, 334 Mich 163, 167; 54 NW2d 290 (1952).

### III. DOCKET NOS. 260970 AND 260971 (THE THOMPSON BUILDING)

#### A. THE TRIAL COURT'S JURISDICTION

Kircher first argues that Ypsilanti was not entitled to maintain this nuisance-abatement action with respect to the Thompson Building because the necessary preconditions for commencing such an action under the Fire Prevention Code were never properly established, and the trial court therefore lacked jurisdiction. We disagree.

Ypsilanti filed its complaint in an attempt to abate and repair alleged unsafe and dangerous conditions at the Thompson Building. The complaint sought nuisance abatement under two separate and distinct theories. First, the complaint sought to abate certain alleged fire hazards pursuant to Michigan's Fire Prevention Code, MCL 29.1 *et seq.* The complaint also sought to abate certain alleged nuisances as violations of Ypsilanti's municipal building and fire codes.[9]

Kircher now contends that the trial court lacked jurisdiction to entertain this nuisance-abatement action because "the necessary conditions precedent to invoking the jurisdiction of the circuit court in an action under MCL 29.23" were not met. Specifically, Kircher argues that while the Fire Prevention Code requires that nuisance-abatement actions be commenced by the *state* fire marshal, the official who initiated the present action was merely a *local* fire marshal.

We previously determined in *Ypsilanti Fire Marshal, supra,* that the trial court had jurisdiction to entertain this nuisance-abatement action under the Fire Prevention Code. Therefore, Kircher's instant argument is arguably barred by the law of the case doctrine. However, because our opinion in *Ypsilanti Fire Marshal* did not specifically address the particular argument raised here, we will briefly address the merits of Kircher's instant claim.

We agree with Kircher that the Fire Prevention Code must be strictly construed and administered with cau-

---

[9] We admit that our prior decision in *Ypsilanti Fire Marshal, supra,* may have led to some confusion in this regard. In that decision, we discussed only Kircher's alleged violations of the Fire Prevention Code, and did not address the alleged violations of municipal building and fire codes. Nonetheless, it is clear from the record that Ypsilanti's original complaint was based on both alleged statutory violations and alleged municipal ordinance violations.

tion. *Comm'r of State Police v Anderson*, 344 Mich 90, 95; 73 NW2d 280 (1955). We further agree that the enforcement provisions of the Fire Prevention Code may not be invoked unless and until the act's jurisdictional preconditions are satisfied. See *Attorney General v Ankersen*, 148 Mich App 524, 550; 385 NW2d 658 (1986). Therefore, before a nuisance may be abated by way of proceedings under the Fire Prevention Code, the court must first determine that there is in fact a fire hazard that requires abatement, repair, or removal. *Id.*

However, we cannot agree with Kircher's argument that no one but the state fire marshal himself or herself may ever commence an action under MCL 29.23, which, when the action was filed, provided in pertinent part:

> The existence of a fire hazard, of any nature, origin, or cause, is declared to be a nuisance and the nuisance may be abated, removed, corrected, and its continuance enjoined in the manner provided by law for the abatement of nuisances. If the *state fire marshal* considers a fire hazard to be imminently dangerous or menacing to human life so that the public safety requires its immediate abatement, removal, correction, or discontinuance, the *state fire marshal* may bring, or cause to be brought, in the circuit court of the county in which the fire hazard is located, an action for the purpose of abating, removing, correcting, or discontinuing the fire hazard.[10] [Emphasis added.]

Because the instant nuisance-abatement action was brought by the Ypsilanti fire marshal rather than by the *state* fire marshal, Kircher contends the circuit court was without jurisdiction to consider it.

Kircher's argument is belied by the plain text of the Fire Prevention Code itself. When the action was filed, the act clearly provided that the state fire marshal and

---

[10] MCL 29.23 was amended in June 2006; however, those amendments did not substantively change the provision at issue. See 2006 PA 189.

the bureau of fire services "may delegate to 1 or more employees of the city . . . employed as full-time fire inspectors the authority to enforce 1 or more of the fire safety rules promulgated under this act." MCL 29.2b(1).[11] Ypsilanti fire marshal Jon Ichesco averred, in his affidavit presented to the trial court, that he contacted the state fire marshal's office before commencing this action in an effort to obtain authority to proceed against Kircher under MCL 29.2b. While the state fire marshal's office did not delegate absolute authority to Ichesco for all purposes, Ichesco averred that the office did specifically authorize him to "carry out . . . enforcement activities pursuant to MCL 29.2b," and to perform "all other inspections not done by the State Fire Marshal's office." Moreover, the lower court record also contains documentation, signed by the director of the Michigan Office of Fire Safety, certifying Ichesco as a "State Certified Fire Inspector."

Kircher has at no time offered evidence to contradict the contents of Ichesco's affidavit or the other documentary evidence pertaining to this matter, nor has Kircher ever suggested that Ichesco was not authorized under MCL 29.2b to perform the delegated functions of the state fire marshal. Indeed, Kircher does not even mention on appeal the existence of MCL 29.2b, merely asserting that because Ichesco was not the "state fire marshal," he was not authorized to commence this action.

In light of the unrefuted documentary evidence, we conclude that Ichesco—the duly authorized Ypsilanti fire marshal with the delegated authority to "carry out . . . enforcement activities pursuant to MCL 29.2b" —was entitled to commence this nuisance-abatement

---

[11] MCL 29.2b(1) was also amended by 2006 PA 189, but those changes do not affect our analysis.

action pursuant to the Fire Prevention Code. Kircher's argument that Ichesco's status as a municipal fire official deprived the circuit court of jurisdiction over this action is without merit. The Ypsilanti fire marshal was entitled to bring this action pursuant to MCL 29.23 on the basis of alleged Fire Prevention Code violations at the Thompson Building.[12]

### B. APPOINTMENT OF RECEIVER

Kircher next argues that the trial court's original order appointing the receiver for the Thompson Building was deficient for several reasons.

First, Kircher contends that the order appointing the receiver was an improper delegation of the trial court's

---

[12] We hold that Ypsilanti was alternatively entitled to bring this action on the basis of Kircher's alleged violations of municipal building and fire ordinances. Home rule cities have broad power to act on behalf of municipal concerns. *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 270; 566 NW2d 514 (1997). Cities may proceed in the circuit court, under properly enacted ordinances, to abate and remove nuisances. *Saginaw v Budd*, 381 Mich 173, 178; 160 NW2d 906 (1968). The Legislature has conferred on the circuit courts broad equitable jurisdiction over nuisance-abatement proceedings, irrespective of the nature and extent of the particular alleged nuisance. MCL 600.2940(1). See also 58 Am Jur 2d, Nuisances, § 338, p 788 (A court sitting in equity "will take jurisdiction when a violation or threatened violation of [a municipal] ordinance amounts to a nuisance, not because the act is in violation of the ordinance, but because it is a nuisance."). However, we note that it is unclear from the record exactly which municipal ordinances Ypsilanti relied on in commencing this action. After searching the record, we are unable to locate the text of any provisions of the Ypsilanti building and fire codes, and we are disinclined to speculate concerning the substance of ordinances that have not been provided on appeal. On remand, it will be necessary for the trial court to specifically identify the municipal ordinances relied on in this matter, and to determine whether Kircher in fact violated those particular ordinances. The trial court must make such findings before moving forward to determine whether the costs of bringing the Thompson Building into compliance with these municipal building and fire ordinances were properly charged to Kircher.

judicial authority to the city of Ypsilanti. We agree, but conclude that this error was harmless.

We determined in *Ypsilanti Fire Marshal, supra*, that the trial court had the jurisdiction to appoint a receiver for the Thompson Building pursuant to MCL 600.2926. That statute provides that "[c]ircuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law." MCL 600.2926. A court-appointed receiver is a ministerial officer of the court, charged with the task of preserving property and assets during ongoing litigation. *Cohen v Bologna*, 52 Mich App 149, 151; 216 NW2d 586 (1974). It is well settled that a receiver's possession of assets and property is tantamount to possession by the court itself. *Chronowski v Park Sproat Corp*, 306 Mich 676, 685; 11 NW2d 286 (1943). A receiver is not appointed as the agent of, or for the benefit of, one party or the other; rather he or she is appointed to protect and benefit both parties equally. *First Nat'l Bank of Detroit v E T Barnum Wire & Iron Works*, 60 Mich 487, 499; 27 NW 657 (1886). Thus, as an officer of the court, a receiver should remain unbiased and impartial. *Id*. The position of receiver requires "exercise of [the] soundest judgment, and always the strictest impartiality . . . ." *Id*.

In light of the foregoing authority, we conclude that the circuit court may not delegate the power to appoint a receiver to a private party. The power to appoint a receiver belongs exclusively to the circuit court. Therefore, to the extent that the trial court delegated to Ypsilanti the power to nominate, retain, and supervise a receiver of its own choosing, it acted improperly and exceeded its authority.

However, because Judge Shelton ratified Ypsilanti's nomination of the original receiver and the successor

receiver by way of court order, we are convinced that any improper delegation of circuit court authority to Ypsilanti was cured by the trial court's subsequent orders. Accordingly, we conclude that any error in this respect was not decisive to the outcome, and we will not reverse on the basis of harmless error. *In re Gazella*, 264 Mich App 668, 675; 692 NW2d 708 (2005); see also MCR 2.613(A).

Next, Kircher contends that the trial court orders appointing the receiver and the successor receiver should be set aside because the orders do not provide for the posting of a receiver's bond. We disagree.

The trial court's order appointing the original receiver did not provide for the posting of a receiver's bond. As we observed in *Ypsilanti Fire Marshal, supra,* slip op at 6, MCL 600.2926 provides that "[i]n all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law." Therefore, we remanded with instructions that the trial court enter an order requiring the receiver to post a receiver's bond consistent with MCL 600.2926.

On remand, Judge Shelton did not immediately follow this Court's remand instructions. Further, at the time the initial receiver was replaced with a successor receiver, Judge Shelton again failed to provide for the posting of a receiver's bond. In fact, the trial court delayed its compliance with our explicit remand instructions for more than one year.

However, the trial court eventually complied, entering orders on July 12, 2005, that required both the original receiver and the successor receiver to post receiver's bonds consistent with the mandate of this Court and MCL 600.2926. Thus, we perceive no lasting error in this regard, and Kircher is entitled to no relief on this issue.

Kircher also contends that the trial court's receivership order constituted an abuse of discretion because the creation of a receivership is an extraordinary equitable remedy, and there existed "adequate legal remedies" in this matter. It is true that receivership is a remedy of last resort, and should not be used where another, less drastic remedy exists. *Hofmeister v Randall*, 124 Mich App 443, 446; 335 NW2d 65 (1983). Because the appointment of a receiver is an extraordinary remedy, a receiver will not be appointed when there exists an adequate remedy at law. *White v Fulton*, 260 Mich 346, 347; 244 NW 498 (1932). However, Kircher does not sufficiently brief this issue by explaining precisely what "adequate legal remedies" were available in this matter,[13] nor does he provide citation to proper controlling legal authority. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, . . . nor may he give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). In light of Kircher's failure to properly brief the merits of his argument, we consider this issue abandoned on appeal. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Lastly, Kircher contends that the trial court's receivership order constituted an abuse of discretion because it failed to provide for proper judicial supervision and oversight of the receiver's activities and expenditures. We agree.

---

[13] Kircher asserts that "fully adequate legal remedies" were available under Ypsilanti's "maintenance and fire prevention codes," but does not explain the precise nature of these purported remedies. This Court will not search the record in an effort to make and develop Kircher's argument for him.

Kircher raised a similar argument in his previous appeal, asserting that the trial court's initial receivership order, as written and implemented, granted the receiver nearly unfettered authority to make repairs and renovations to the Thompson Building, and nearly unchecked power to charge Kircher for any such work. We agreed, and expressly directed the trial court on remand to narrow the scope of the receiver's powers and authority. As we stated in *Ypsilanti Fire Marshal*, *supra*, slip op at 5-6:

> By giving the receiver the authority to make the Thompson building "economically viable," the order allows the receiver to make repairs beyond removing the hazards of which plaintiffs originally complained. [Ypsilanti's] reliance on the fire code does not support its argument that the broad scope of the order is appropriate. The quoted portion of the fire code only addresses hazards that endanger human life. It does not address the "economic viability" of the building. Accordingly, we reverse that portion of the June 14, 2002, order providing "that the Receiver needs to make the building economically viable and functional."
>
> On remand, the trial court shall enter an order that more precisely defines the receiver's duties. The listed repairs shall be in keeping with the reasons that the receivership was sought, i.e., to repair the building so that it is no longer a hazard to human life, and also in keeping with the trial court's finding that:
>
> "[Kircher] has not complied with the [c]ourt's May [22], 1996 order, or the July 14, 1997 order. Furthermore, I'm going to specifically find that the building is in dangerous condition and is a nuisance."
>
> The trial court's order must also comply with the provisions of MCL 600.2926 which provides: "In all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law."

Nonetheless, to date, the trial court has not amended its original order or issued a new order to limit or otherwise narrow the scope of the receiver's authority. To make matters worse, the trial court entered an order replacing the original receiver with a successor receiver on March 21, 2005—nearly 11 months after we issued our remand instructions in *Ypsilanti Fire Marshal*. The order appointing the successor receiver made no mention of this Court's remand instructions, and in no way limited the authority or power of the successor receiver as required by this Court's directive. Instead, the trial court left unchanged the framework under which the original receiver had operated, allowing the successor receiver to merely continue in the shoes of the original receiver and to carry on virtually unlimited repairs and renovations to the Thompson Building without first seeking judicial permission or approval.

" 'It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court.' " *K & K Construction, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005), quoting *Rodriguez v Gen Motors Corp (On Remand)*, 204 Mich App 509, 514; 516 NW2d 105 (1994). Despite this Court's explicit instructions, the trial court permitted the receiver—and then the successor receiver—to continue unchecked and unsupervised, running up substantial costs and only seeking approval long after the charges were already incurred. Indeed, much of the confusion in these consolidated cases stems from the trial court's failure to comply with our April 27, 2004, remand instructions. Our instructions were not intended as meaningless directives with no design, purpose, or reason. Instead, they were meant to bring the trial court's existing orders into compliance with established legal rules and to effect the organized and systematic progress of this complex litigation.

Because the remand instructions were not followed, and the trial court did not approve the costs of repairs and renovations before they were incurred, Kircher received no meaningful opportunity to contest the individual costs incurred by the receiver and the successor receiver, or to offer evidence in response to the individual proposed projects at the Thompson Building. We recognize that Judge Shelton held after-the-fact evidentiary hearings in an attempt to comply with our remand instructions, and that after these hearings he ultimately approved virtually all of the incurred costs.[14] However, we cannot determine whether Judge Shelton's findings were clearly erroneous because we have not been presented with sufficient competing evidence, which surely would have been offered by the parties had this matter proceeded as directed under our April 27, 2004, opinion. The trial court's after-the-fact approval of the numerous expenses incurred in this matter does not afford us the opportunity for meaningful review that would have followed from an organized cost-by-cost determination in the court below. Moreover, we cannot omit mention of the real possibility that by reserving review of all expenses until after the repairs and renovations were already completed, Judge Shelton in effect preordained his decision to allow or disallow each individual expenditure. It is much less subjective to evaluate the propriety of proposed repairs before they are begun than after the work is finished and the costs are already incurred.

Further, even assuming that all expenditures were properly made to abate nuisances at the Thompson

---

[14] We express no opinion regarding whether any individual expense was or was not appropriate. Indeed, all costs may have been proper. However, we simply do not have sufficient record evidence from which to assess Judge Shelton's findings with respect to each individual cost.

Building, the trial court did not specifically separate the expenses incurred to abate violations of the Fire Prevention Code from those incurred to abate violations of Ypsilanti city ordinances. Because we do not know whether the costs were incurred to abate Fire Prevention Code violations, city code violations, or both, we necessarily have no basis from which to discern whether any individual cost fell within the parameters of our April 27, 2004, remand instructions.

After reviewing the extensive record in these consolidated cases, we are forced to conclude that the trial court abused its discretion in failing to define more precisely the receiver's and successor receiver's duties, and in failing to provide for proper judicial oversight and control of the receiver's and successor receiver's expenditures. Specifically, the trial court acted improperly by continuing to allow the receiver and successor receiver to incur costs with respect to the Thompson Building without first approving the proposed expenses and separating the proposed repairs into those required to abate Fire Prevention Code violations and those required to abate local ordinance violations.

On remand, the trial court shall separate the individual costs incurred to abate violations of the Fire Prevention Code from the individual costs incurred to abate all other nuisances under the Ypsilanti building and fire codes. With respect to the latter category of expenses—those incurred to abate alleged violations of local ordinances—the trial court shall identify the specific Ypsilanti ordinance under which each repair and expense was authorized.

### C. LIEN AND FORECLOSURE

Kircher claims several errors with respect to the trial court's calculation of the lien amount, the trial court's

foreclosure on the lien, and the trial court's order directing that the property be sold.[15] As an initial matter, we will not set aside a foreclosure sale in the absence of fraud, accident, mistake, or significant irregularities. *Mitchell, supra* at 724-725; see also *Senters v Ottawa Savings Bank*, 443 Mich 45, 55-56; 503 NW2d 639 (1993); *Macklem v Warren Construction Co*, 343 Mich 334, 339; 72 NW2d 60 (1955). Thus, even if Kircher were correct in asserting that improper and unnecessary expenses were included in the lien, we would be disinclined to set aside the sheriff's sale.

Kircher argues that the lien against the Thompson Building was too high and should have been calculated at a lower amount. Kircher also contends that the period of redemption following the sheriff's sale should have been one year, rather than six months as the trial court ordered. We agree that the lien should have included only the costs necessarily incurred under the Fire Prevention Code. However, we conclude that those costs necessarily incurred to abate violations of the municipal building and fire codes are recoverable by means of an alternative method.

The trial court's failure to comply with our April 27, 2004, remand instructions makes complete appellate review in this matter nearly impossible. We are unable to meaningfully determine on appeal which costs should have been included in the original lien amount because the trial court never engaged in a searching cost-by-cost analysis to determine which expenses were necessary to properly abate nuisances and which expenses were not. As noted above, virtually all individual repairs to the Thompson Building were approved after the fact, and Kircher received essentially no opportunity to contest

---

[15] We reject Kircher's argument that the foreclosure action was not properly commenced and was filed prematurely.

any of the costs before they were incurred. In light of the evident defects in the trial court's approval of the costs and expenses, we remand for a redetermination of the proper amount of the lien.

On remand, the trial court shall take evidence from the parties regarding the necessity and appropriateness of each incurred expense. MCR 7.216(A)(5). We expressly direct the trial court to engage in a searching review of each individual cost. The trial court shall take additional evidence to determine whether each cost was in keeping with the original purpose for which the receiver was appointed—to abate the Fire Prevention Code violations and municipal code violations alleged in Ypsilanti's original complaint.[16] Once the repair costs are categorized under either the Fire Prevention Code or an applicable Ypsilanti city ordinance, the court shall determine whether each cost was in fact necessary to abate a violation of the act or ordinance in question.

If the trial court determines that any cost was unnecessary to abate an actual violation of the Fire Prevention Code or an applicable city ordinance, that cost must be *excluded* from the new lien amount. For instance, the trial court must exclude from the lien amount any expense that was incurred to make the property "economically viable."

If the trial court determines that any cost was necessarily incurred to properly abate a violation of the Fire Prevention Code, that cost shall be *included* in the new lien amount. The Legislature has specifically pro-

---

[16] The trial court should remain cognizant of the fact that Ypsilanti's initial complaint alleged violations of both the Fire Prevention Code and city ordinances. As noted above, the trial court must first determine whether each expense was incurred (1) to abate a violation of the Fire Prevention Code, or (2) to abate a violation of a specific Ypsilanti city ordinance. The trial court shall separate all costs into one of these categories.

vided that costs incurred to abate violations of the Fire Prevention Code may be assessed as liens against real property. MCL 29.16(1); *Ankersen, supra* at 554.[17]

However, if the trial court determines that any cost was necessarily incurred to properly abate a nuisance under the Ypsilanti building code or fire code, that cost *must be excluded* from the new lien amount. This is because, unlike the statutory provision allowing municipalities to impose liens for the cost of abating violations of the Fire Prevention Code, there is no general statutory provision permitting municipalities to impose liens for the cost of general nuisance abatement under city ordinances.[18] In the absence of explicit statutory authorization, a city may not impose a lien on real

---

[17] Under the Fire Prevention Code, liens imposed for the expense of abating fire hazards are to be foreclosed in accordance with the procedures set forth in the Construction Lien Act, MCL 570.1101 *et seq.* MCL 29.16(1). Under the Construction Lien Act, the trial court may set a period of redemption, which must not exceed four months. MCL 570.1121(3). Therefore, the period of redemption following foreclosure on any lien imposed under the Fire Prevention Code must not exceed four months. The trial court in this matter provided for a period of redemption of six months. However, this error was plainly harmless in light of the fact that it actually afforded Kircher more time to redeem than was statutorily authorized. In light of the plain language of the Fire Prevention Code, which adopts the procedures set forth in the Construction Lien Act, Kircher's argument that the trial court should have provided for a one-year period of redemption is without merit.

[18] We note that certain specific statutes allow municipalities to impose liens in limited situations. For instance, provisions of the Michigan Housing Law, MCL 125.401 *et seq.*, specifically allow liens against real property for costs related to municipal nuisance-abatement activities. MCL 125.534(7); MCL 125.541(6); MCL 125.541(7). However, neither party has argued that the Housing Law applies in this matter. Further, the Home Rule City Act, MCL 117.1 *et seq.*, allows a city to impose liens for the cost of abating a "blight violation." MCL 117.4r. However, before such liens may be imposed, a city must follow the administrative hearing procedures of MCL 117.4q. There is no indication that these statutory provisions apply in this matter, and none of these statutory provisions was raised by Ypsilanti below.

property. *Home Owners' Loan Corp v Detroit*, 292 Mich 511, 516; 290 NW 888 (1940). Nor may the courts create or impose a lien on real property absent an express agreement by the parties or other legal authority. *Wiltse v Schaeffer*, 327 Mich 272, 282; 42 NW2d 91 (1950); *Whitehead v Barker*, 288 Mich 19, 27; 284 NW 629 (1939).

Accordingly, the costs of abating municipal-ordinance violations were not properly included in the lien amount as originally determined by the trial court. These costs were not collectible through the foreclosure proceedings held in this matter. Nonetheless, as we will discuss, it does not necessarily follow that the necessary costs of abating municipal-ordinance violations are not recoverable by means of an alternative method.

After a new and proper lien amount is determined—which does not include the costs of nuisance abatement under the Ypsilanti building and fire codes—the trial court shall subtract that amount from the final amount of the original lien imposed against Thompson Building. The difference between the original final lien amount and the properly determined new lien amount will constitute a surplus, to be disposed of as described below.

As the fee holder and owner of the Thompson Building on the eve of foreclosure, Kircher would ordinarily be entitled to this surplus. At the same time, we note that successor receiver Beal is entitled to costs properly incurred in abating violations of the Ypsilanti building and fire codes. Indeed, in the case of any nuisance, the circuit court may abate the nuisance *at the expense of the property owner*. MCL 600.2940(3).

As noted, there is no general statutory authority allowing municipalities to impose liens for the cost of nuisance abatement under city ordinances. However,

costs incurred to abate nuisances may be collected in the same manner as debts are generally collected on execution. MCL 600.2940(4). The Legislature has provided that the expense of abating and removing nuisances in general

> shall be collected . . . *in the same manner as damages and costs are collected upon execution*, excepting that the materials of any buildings, fences, or other things that may be removed as a nuisance, may be sold . . . in like manner as goods are sold on execution for the payment of debts. The [official collecting the costs] may apply the proceeds of such sale to defray the expenses of the removal, and shall pay over the balance thereof, if any, to the defendant upon demand. If the proceeds of the sale are not sufficient to defray the said expenses, he shall collect the residue thereof as before provided. [MCL 600.2940(4) (emphasis added).]

The procedure for collecting debts on execution is described in Chapter 60 of the Revised Judicature Act, MCL 600.6001 *et seq*. Accordingly, Beal may collect all costs properly incurred to abate violations of the Ypsilanti building and fire codes by way of the procedure set forth in MCL 600.6001 *et seq*.

Execution may be made against all personal property of a judgment debtor that is liable to execution at common law. MCL 600.6017. This includes United States currency or money. MCL 600.6017(6). While execution against personal property typically requires a judicial sale, execution against United States currency or money does not. Instead, currency or money may simply be "taken as money collected and paid." MCL 600.6017(6). While there exists a one-year redemption period following execution against a judgment debtor's real property, there is no statutory period of redemption following execution against a judgment debtor's per-

sonal property. MCL 600.6062; 27 Michigan Law & Practice, Remedies, § 46, p 229.

Although Kircher ordinarily would be entitled to the surplus left over after subtracting the newly calculated lien amount from the original final lien amount, we direct the trial court on remand to impound the surplus and use it to satisfy the necessary expenses incurred to properly abate violations of the Ypsilanti building and fire codes. MCL 600.2940(4); MCL 600.6017(6). After satisfying all expenses properly incurred to abate violations of the Ypsilanti building and fire codes at the Thompson Building, the trial court shall return any money remaining from the surplus to Kircher.

### D. DISCHARGE OF THE RECEIVER

Kircher also argues that the trial court abused its discretion in failing to discharge the initial receiver and in appointing a successor receiver. We conclude that the trial court abused its discretion by failing to terminate the successor receivership at the time of the sheriff's sale.

In general, a receiver should be discharged and the receivership terminated when the initial reasons for the receivership cease to exist. 65 Am Jur 2d, Receivers, § 141, p 756. In the context of mortgage foreclosures, a receiver should be discharged when the full amount of the judgment is received at sale, when the property is bid off for the full amount of the debt, interest, and costs, or when the applicable period of redemption has expired. 59A CJS, Mortgages, § 790, p 328. In no case should the receivership be continued beyond the time when title vests exclusively in the foreclosure-sale purchaser. 59A CJS, Mortgages, § 790, p 327.

We perceive no reason why these general rules should not be applied in the context of other lien foreclosure

proceedings as well. When successor receiver Beal purchased the Thompson Building at the May 11, 2006, sheriff's sale, he took the property with full knowledge that further repairs and expenditures might be necessary to bring the property into complete compliance with Ypsilanti city codes. Having served as successor receiver of the property, Beal was clearly aware of the Thompson Building's physical condition at the time of sale. In short, when Beal purchased the property, the original reasons for the receivership ceased to exist. As record owner, Beal himself became responsible for any further necessary repairs.

We conclude that the trial court abused its discretion by failing to terminate the successor receivership at the time of the May 11, 2006, sheriff's sale of the Thompson Building. Upon Beal's purchase of the property, there remained no further need for a receiver. Beal was fully aware at the time of sale that further repairs might be necessary to abate additional code violations, but purchased the property notwithstanding this knowledge. Moreover, as purchaser and owner, Beal was able, following the sale, to personally effectuate any further necessary repairs without the assistance of a court-appointed receiver. On remand, the trial court shall enter an order terminating the receivership as of May 11, 2006. All costs incurred beyond that date by the successor receiver—with the exception of necessary interest, tax, and insurance costs incurred between the date of sale and the end of the redemption period—are the responsibility of Beal as record owner of the Thompson Building.

### E. PROPRIETY OF POSTAPPEAL EXPENDITURES

Kircher points out that the trial court amended its initial judgment of foreclosure after the claims of appeal

were filed in this matter, approving several new expenses and substantially increasing the lien against the Thompson Building before the sheriff's sale was held. Kircher argues that this was erroneous. We disagree.

Because the lower court records were transmitted to this Court soon after the claims of appeal were filed, we were not initially aware of the exact extent to which the trial court amended the judgment of foreclosure after the filing of these appeals. We now know that between the filing of these appeals and the date of the sheriff's sale, the trial court amended its judgment to raise the amount of the lien against the Thompson Building to $346,186.39.

In general, once a claim of appeal is filed with this Court, the trial court may not amend the judgment appealed from except pursuant to an order of this Court, by stipulation of the parties, or as otherwise provided by law. MCR 7.208(A); *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 314; 486 NW2d 351 (1992). Indeed, the filing of a claim of appeal typically divests the circuit court of its jurisdiction to amend its final orders and judgments. *Wilson v Gen Motors Corp*, 183 Mich App 21, 41; 454 NW2d 405 (1990); *Vallance v Brewbaker*, 161 Mich App 642, 648; 411 NW2d 808 (1987). However, an exception to these general rules applies when property is held by the trial court for conservation or management. MCR 7.208(D). In such cases, the trial court "retains jurisdiction over the property pending the outcome of the appeal, except as the Court of Appeals otherwise orders." MCR 7.208(D).

Here, the Thompson Building was held in receivership for the express purposes of management and conservation. Accordingly, the trial court retained jurisdiction under MCR 7.208(D) to amend the judgment of foreclosure and increase the amount of the lien against

the Thompson Building, even after Kircher filed the claims of appeal in this matter. We reject Kircher's argument that the trial court lacked the authority to amend the judgment of foreclosure and raise the amount of the lien after the claims of appeal were filed.

### F. COSTS AND FEES

Kircher next contends that the trial court erred in overcompensating the receiver, asserting that the percentage-based fees allowed to Barnes were excessive. Kircher also suggests that the trial court erred in granting attorney fees to the receiver. As an initial matter, we note that these arguments are barred by the law of the case doctrine. We ruled in *Ypsilanti Fire Marshal*, *supra*, slip op at 6-7, that the broad order allowing receiver's fees and attorney fees in relation to the Thompson Building had been properly entered by the trial court. However, even if these arguments had not been previously addressed, Kircher has abandoned the issues by failing to specifically raise them in his statement of the questions presented. MCR 7.212(C)(5); *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000); *Grand Rapids Employees Independent Union v Grand Rapids*, 235 Mich App 398, 409-410; 597 NW2d 284 (1999); *Marx v Dep't of Commerce*, 220 Mich App 66, 81; 558 NW2d 460 (1996). Although several of Kircher's questions presented raise the general appropriateness of certain costs, none of the questions presented specifically identifies the matter of receiver's fees or attorney fees. We decline to further address the merits of these arguments, which have not been properly presented.

### G. KIRCHER'S COUNTERCLAIM

Kircher also argues that the trial court erred in dismissing his counterclaim in this matter. We disagree.

It is axiomatic that conclusory statements unsupported by factual allegations are insufficient to state a cause of action. *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003); *ETT Ambulance Service Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994). In his counterclaim, Kircher put forth only conclusory assertions, contained in broad, generalized sentences and unsupported by factual allegations. He claimed only that Ypsilanti's conduct had caused him to incur financial loss. He did not identify with any specificity the manner in which he had been harmed or the precise nature of his injuries. The counterclaim was therefore insufficient to state a claim on which relief could be granted. MCR 2.116(C)(8); *Churella, supra* at 272.

### IV. DOCKET NOS. 260972 AND 260973 (THE APARTMENT BUILDING)

#### A. THE TRIAL COURT'S JURISDICTION

Similar to the argument raised with respect to the Thompson Building, Kircher argues that Ypsilanti was not entitled to maintain this action with respect to the apartment building because the necessary preconditions for commencing such an action under the Fire Prevention Code were never established. We disagree for the reasons stated in part III(A) of this opinion.

The unrefuted documentary evidence showed that Ypsilanti fire marshal John Ichesco was delegated the authority to "carry out . . . enforcement activities pursuant to MCL 29.2b." Therefore, we hold that he was entitled to commence this action under MCL 29.23 on the basis of alleged Fire Prevention Code violations at Kircher's apartment building.[19]

---

[19] As in the case of the Thompson Building, Ypsilanti was alternatively entitled to bring this action on the basis of alleged violations of municipal

### B. "AFTER-DISCOVERED" MUNICIPAL-CODE VIOLATIONS

As in Washtenaw Circuit Case No. 02-000434-CH, Ypsilanti originally filed its complaint in Washtenaw Circuit Case No. 01-000560-CH to abate alleged violations of the Fire Prevention Code and certain Ypsilanti municipal ordinances. At no time after the initial complaint was filed did Ypsilanti seek to narrow the scope of this action to allege violations of the Fire Prevention Code alone, or to otherwise discontinue that portion of the action seeking to abate municipal-code violations at the apartment building. As we noted above, some of the confusion in these consolidated appeals may stem from our April 27, 2004, opinion itself. There, with respect to the apartment building, we discussed only the five initial repairs under the Fire Prevention Code that were included in the trial court's June 14, 2002, order. We did not discuss any alleged violations of Ypsilanti municipal ordinances.

However, in *Ypsilanti Fire Marshal, supra,* we in no way limited the scope of Ypsilanti's authority to the five initial repairs originally listed by the trial court. Instead, we merely expressed our view that the trial

---

building and fire ordinances. As noted, cities may proceed in the circuit court, under properly enacted ordinances, to abate and remove nuisances. *Budd, supra* at 178. The Legislature has conferred on the circuit courts broad equitable jurisdiction over nuisance-abatement proceedings, irrespective of the nature and extent of the particular alleged nuisance. MCL 600.2940(1). See also 58 Am Jur 2d, Nuisances, § 338, p 788. However, we note that it is unclear from the record exactly which municipal ordinances Ypsilanti relied on in commencing this action. After searching the record, we are unable to locate the text of any provisions of the Ypsilanti building and fire codes, and we are disinclined to speculate concerning the substance of ordinances that have not been provided on appeal. As in the case of the Thompson Building, it will be necessary on remand for the trial court to specifically identify the municipal ordinances relied on in this matter, and to determine whether Kircher in fact violated those particular ordinances.

court's order with respect to the apartment building—which listed five specific necessary repairs—was narrower and therefore more defensible that the openended, broad order that the trial court entered with respect to the Thompson Building. Because the order concerning the apartment building was more precise in its description of the necessary repairs and modifications, we determined that less specific remand instructions were required in the case of the apartment building than in the case of the Thompson Building. We did not, however, decide that the trial court's June 14, 2002, order was in any way *limited* to the five repairs listed therein, or that the trial court was without authority to order the abatement of additional nuisances or violations at the apartment building.

Because we did not decide that the trial court's June 14, 2002, order limited the scope of Ypsilanti's authority to repair the apartment building, we must reject Kircher's claims to the contrary. The law of the case doctrine does not bar the trial court's finding that Ypsilanti was entitled to proceed with other nuisance-abatement projects at the apartment building beyond the five originally listed repairs. Nor was it clearly erroneous for the trial court to determine that Ypsilanti had the authority to proceed with the abatement of municipal-ordinance violations at the apartment building. Indeed, Kircher was at all times on notice that Ypsilanti was concerned not only about alleged Fire Prevention Code violations, but also numerous alleged municipal-code violations as well.

Moreover, we find no record support for Kircher's contention that the code violations alleged by Ypsilanti were not within the original contemplation of the parties and were not included within the scope of the June 14, 2002, order. We reject Kircher's argument that

the 178 code violations to which the trial court referred were "after-discovered" in light of the fact that those alleged violations were the same as the "178 various code violations" contained in Ypsilanti's original complaint. Accordingly, we conclude that the authority to abate these violations was necessarily included within the scope of the trial court's June 14, 2002, order and this Court's April 27, 2004, remand instructions.

C. LIEN AND FORECLOSURE

Kircher claims several errors with respect to the trial court's calculation of the lien amount, the trial court's foreclosure on the lien, and the trial court's order directing that the apartment building be sold.[20] As noted above, we will not set aside a foreclosure sale in the absence of fraud, mistake, accident, or significant irregularities. *Mitchell, supra* at 724-725; see also *Senters, supra* at 55-56; *Macklem, supra* at 339. Thus, even if Kircher were correct in asserting that the trial court improperly included unnecessary expenses in the lien amount, we would not be inclined to vacate the sheriff's sale in this matter.

Like the assertions made with respect to the Thompson Building, Kircher asserts that the lien against the

---

[20] We reject Kircher's argument that the foreclosure action was not properly commenced because it was filed prematurely. Because the lien was granted to Ypsilanti and the foreclosure action was brought by Barnes, we agree with Kircher that the foreclosure action was not brought by the real party in interest. MCL 600.2041; MCR 2.201(B). A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in someone else. *Blue Cross & Blue Shield of Michigan v Eaton Rapids Community Hosp*, 221 Mich App 301, 311; 561 NW2d 488 (1997). However, had this issue been properly raised, the trial court could have allowed substitution of the parties at any time during the pendency of this litigation. MCR 2.202(D). Therefore, this was harmless error, and we do not reverse on the basis of error that was not decisive to the outcome. *In re Gazella, supra* at 675; see also MCR 2.613(A).

apartment building should have been calculated at a lower amount. However, as above, we are unable to meaningfully review the trial court's findings, and cannot determine whether the lien amount was correctly calculated. Virtually all individual repairs and renovations to the apartment building were approved after the fact, and Kircher received no meaningful opportunity to contest any of the costs before they were incurred. Therefore, we remand for a redetermination of the proper amount of the lien against the apartment building. As in the case of the Thompson Building, the trial court shall allow Kircher to separately contest each cost and shall take evidence from the parties regarding the necessity and appropriateness of each incurred expense. MCR 7.216(5). The trial court shall determine whether each cost was in keeping with the original purpose for which Ypsilanti's complaint was filed—to abate the alleged Fire Prevention Code violations and municipal-code violations at the apartment building.

The trial court shall follow the same procedure as that outlined in part III(C). On remand, the trial court must first determine whether each expense was incurred (1) to abate a violation of the Fire Prevention Code, or (2) to abate a violation of an Ypsilanti municipal code. The trial court shall separate all costs into one of these two categories. Once all costs are categorized under either the Fire Prevention Code or an applicable Ypsilanti city ordinance, the court shall proceed to determine whether each cost was in fact necessary to abate a violation of the act or ordinance in question.

If the trial court determines that any cost was unnecessary to abate an actual violation of the Fire Prevention Code or an applicable city ordinance, that cost must be *excluded* from the new lien amount. For instance, the trial court must exclude from the lien

amount any expense that was incurred to make the property "economically viable."

If the trial court determines that any cost was necessarily incurred to properly abate a violation of the Fire Prevention Code, that cost shall be *included* in the new lien amount. The Legislature has specifically provided that costs incurred to abate violations of the Fire Prevention Code may be assessed as liens against real property. MCL 29.16(1); *Ankersen, supra* at 554.[21]

However, if the trial court determines that any cost was necessarily incurred to properly abate a nuisance under the Ypsilanti building code or fire code, that cost *must be excluded* from the new lien amount. Unlike the statutory provision allowing municipalities to impose liens for the cost of abating violations of the Fire Prevention Code, there is no general statutory provision permitting municipalities to impose liens for the cost of general nuisance abatement under city ordinance. In the absence of explicit statutory authorization, a city may not impose a lien on real property. *Home Owners' Loan Corp, supra* at 516. Nor may the courts create or impose a lien on real property absent an

---

[21] Under the Fire Prevention Code, liens imposed for the expense of abating fire hazards are to be foreclosed in accordance with the procedures set forth in the Construction Lien Act, MCL 570.1101 *et seq.* MCL 29.16(1). Under the Construction Lien Act, the trial court may set a period of redemption, which must not exceed four months. MCL 570.1121(3). Therefore, the period of redemption following the foreclosure of any lien imposed under the Fire Prevention Code must not exceed four months. The trial court in this matter provided for a period of redemption of six months. However, this error was plainly harmless, especially in light of the fact that it actually afforded Kircher two additional months to redeem. In light of the plain language of the Fire Prevention Code, which adopts the procedures set forth in the Construction Lien Act, Kircher's argument that the trial court should have provided for a one-year period of redemption is without merit.

express agreement by the parties or other legal authority. *Wiltse, supra* at 282; *Whitehead, supra* at 27.

Therefore, the costs of abating municipal-ordinance violations were not properly included in the lien amount as originally determined by the trial court, and these costs were not collectible through the foreclosure proceedings held in this matter. Nonetheless, it does not necessarily follow that Barnes may not recover the necessary costs of abating municipal-ordinance violations at the apartment building by way of an alternative method.

After a new and proper lien amount is determined—which does not include the costs of nuisance abatement under the Ypsilanti building and fire codes—the trial court shall subtract that amount from the final amount of the original lien imposed against the apartment building. The difference between this original final lien amount and the properly determined new lien amount will constitute a surplus, to be disposed of as described below.

As the owner of the apartment building on the eve of foreclosure, Kircher ordinarily would be entitled to this surplus. However, Barnes—as purchaser of the apartment building at a sheriff's sale—is entitled to recover from Kircher the costs properly incurred in abating violations of the Ypsilanti building and fire codes. MCL 600.2940(3).

Costs incurred to abate nuisances may be collected in the same manner as debts are generally collected on execution. MCL 600.2940(4). Accordingly, Barnes may collect all costs properly incurred to abate violations of the Ypsilanti building and fire codes by way of the procedure set forth in MCL 600.6001 *et seq.*

As discussed above, execution generally may be made against all personal property, including United States

currency or money. MCL 600.6017(6). Execution against United States currency or money does not require a judicial sale. Instead, currency or money may simply be "taken as money collected and paid." MCL 600.6017(6). While there is a one-year redemption period following execution against a judgment debtor's real property, there is no statutory period of redemption following execution against personal property. MCL 600.6062; 27 Michigan Law & Practice, Remedies, § 46, p 229.

Although Kircher ordinarily would be entitled to the surplus left over after subtracting the new lien amount from the originally calculated final lien amount, we direct the trial court on remand to impound the surplus and use it to satisfy any necessary expenses properly incurred to abate violations of the Ypsilanti building and fire codes at the apartment building. MCL 600.2940(4); MCL 600.6017(6). After satisfying all expenses properly incurred to abate violations of the Ypsilanti building and fire codes at the apartment building, the trial court shall return any money remaining from the surplus to Kircher.

### D. DISCHARGE OF THE "DE FACTO" RECEIVER

Unlike in the case of the Thompson Building, no receiver was ever appointed in the case of the apartment building. As we noted in *Ypsilanti Fire Marshal*, *supra*, slip op at 8:

> [T]he order appealed in [the case of the apartment building] is significantly different from that in the case [of the Thompson Building]. First, in this case, neither Barnes nor the city was appointed receiver. Instead, the trial court granted the city the exclusive right to repair the building and fire code violations. The order merely permits the city to employ Barnes or other entities to accomplish this task.

However, as noted earlier, Barnes was appointed as Ypsilanti's exclusive agent to perform repairs and renovations at the apartment building. Further, Ypsilanti gave Barnes nearly carte blanche authority to determine the necessity of repairs and to decide how to proceed with the work. Therefore, we agree with Kircher that Barnes essentially acted as a "de facto" receiver of the apartment building.

When Barnes acquired the apartment building at the sheriff's sale, paying the full amount of the lien, he took the property with full knowledge of the fact that further expenses were likely necessary to bring the property into compliance with Ypsilanti city codes. Barnes had served as Ypsilanti's exclusive contractor at that property, and was clearly aware of the apartment building's physical condition. Thus, when Barnes purchased the property, the necessity of Ypsilanti's exclusive authority to possess and repair the apartment building ceased to exist.

We conclude that the trial court abused its discretion by failing to terminate Ypsilanti's authority to possess and repair the apartment building at the time of the sheriff's sale to Barnes. Upon Barnes's purchase of the property, there remained no further need for court oversight of necessary repairs and nuisance-abatement activities. Barnes was fully aware at the time of sale that further repairs were necessary to abate municipal-code violations, but purchased the property anyway. As owner, Barnes was able to effectuate any further necessary repairs without the assistance of Ypsilanti or the trial court. On remand, the trial court shall enter an order terminating Ypsilanti's authority over the apartment building as of the date of the sheriff's sale. All costs incurred by Ypsilanti or its contractors beyond that date—with the exception of necessary interest, tax,

and insurance costs incurred between the date of sale and the end of the redemption period—are the responsibility of Barnes, as record owner of the property.

### E. COSTS AND FEES

Kircher suggests that the trial court erred by overcompensating Ypsilanti's contractor, asserting that the percentage-based fee allowed to Barnes in this matter was "excessive, and no authority was cited for a court of equity allowing a mark-up of this magnitude." Kircher also suggests that the trial court erred in granting attorney fees in this matter. However, Kircher has abandoned these issues by failing to specifically raise them in his statement of questions presented. MCR 7.212(C)(5); *Caldwell, supra* at 132; *Grand Rapids Employees, supra* at 409-410; *Marx, supra* at 81. Although several of Kircher's questions presented broadly raise the general appropriateness of costs and expenditures, none of the questions presented identifies the particular matter of contractor's fees or attorney fees. We decline to address these arguments, which have not been properly presented for our review.

### F. KIRCHER'S COUNTERCLAIM

Kircher also argues that the trial court erred in dismissing his counterclaim in this matter. We disagree. Conclusory statements unsupported by factual allegations are insufficient to state a cause of action. *Churella, supra* at 272; *ETT Ambulance, supra* at 395. In his counterclaim, Kircher put forth only conclusory assertions, contained in broad, generalized sentences and unsupported by factual allegations. He claimed that Ypsilanti's conduct had caused him to

incur financial loss, but did not allege with any specificity the manner in which he had been harmed or the precise nature of his injuries. Kircher's counterclaim was legally insufficient to state a claim. MCR 2.116(C)(8); *Churella, supra* at 272.

### V. REMAND TO DIFFERENT TRIAL JUDGE

In both Docket Nos. 260970 and 260971 and Docket Nos. 260972 and 260973, Kircher argues that proceedings on remand should be assigned to a different trial judge, to be determined by the State Court Administrative Office. We disagree.

We recognize that if proper procedures had been followed in this matter from the outset, these consolidated appeals may not have been necessary. However, we are also cognizant of the strong probability that any judge would have grown weary of this protracted and oft-irksome matter.

Kircher has failed to demonstrate that the trial judge was in any way actually prejudiced or biased. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001). At most, Kircher has shown an understandable frustration with the protracted proceedings involved in this matter. The mere fact that a judge rules against a litigant, even if the rulings are determined to be erroneous, is not sufficient to require disqualification or reassignment. *Id.* at 597-598. We decline Kircher's request to involve the State Court Administrative Office or to reassign this matter on remand to a different trial judge. Reassignment to a different judge at this time would necessarily entail a further waste of time and judicial resources. *People v Evans*, 156 Mich App 68, 72; 401 NW2d 312 (1986).

## VI. CONCLUSION

In light of our resolution of these consolidated appeals, we decline to address the constitutional issues raised by Kircher in these cases.[22]

In Docket Nos. 260970 and 260971, we affirm the trial court's order appointing the receiver. We also affirm the trial court's order granting receiver's fees, attorney fees, and costs. We affirm the foreclosure proceedings and judgment of foreclosure to the extent that they involved the lien imposed for expenses properly incurred under the state Fire Prevention Code. Finally, we affirm the dismissal of Kircher's counterclaim pursuant to MCR 2.116(C)(8).

---

[22] Relying on *Wayne Co v Hathcock*, 471 Mich 445; 684 NW2d 765 (2004), Kircher cursorily suggests that his properties have been taken by Ypsilanti without just compensation. Even assuming the requisite state action could be demonstrated, we disagree with Kircher's contention, which disregards the well-established nuisance exception to the prohibition on governmental takings. The federal and state constitutions both proscribe the taking of private property for public use without just compensation. US Const, Am V; Const 1963, art 10, § 2; *Adams Outdoor Advertising v East Lansing (After Remand)*, 463 Mich 17, 23; 614 NW2d 634 (2000); *Oakland Co Bd of Co Rd Comm'rs v JBD Rochester, LLC*, 271 Mich App 113, 114; 718 NW2d 845 (2006). The Takings Clause of the Fifth Amendment is substantially similar to the Takings Clause of the Michigan Constitution, *Tolksdorf v Griffith*, 464 Mich 1, 2; 626 NW2d 163 (2001), and the two provisions should generally be interpreted coextensively, see *Peterman v Dep't of Natural Resources*, 446 Mich 177, 184 n 10; 521 NW2d 499 (1994). The nuisance exception to the prohibition on unconstitutional takings provides that because no individual has the right to use his or her property so as to create a nuisance, "the [s]tate has not 'taken' anything when it asserts its power to enjoin [a] nuisance-like activity." *Keystone Bituminous Coal Ass'n v DeBenedictis*, 480 US 470, 491 n 20; 107 S Ct 1232; 94 L Ed 2d 472 (1987). Indeed, "[c]ourts have consistently held that a [s]tate need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Id.* at 492 n 22. Because Ypsilanti was exercising its legitimate police power to abate the alleged nuisances on Kircher's property, no unconstitutional taking occurred.

We vacate the judgment of foreclosure and invalidate the foreclosure proceedings to the extent that they involved the collection of expenses incurred solely under the municipal building and fire codes. We remand for the entry of an order terminating the successor receivership at the time of the sheriff's sale, and for the following further proceedings.

On remand, the trial court shall determine whether each expense was incurred (1) to abate a violation of the Fire Prevention Code, or (2) to abate a violation of the Ypsilanti building and fire codes. For expenses falling into the second category, the court shall state with specificity which provision of the city codes authorized the charges. The trial court shall determine which expenses were properly incurred to abate violations of the Fire Prevention Code, and shall include these expenses in the amount of the foreclosed lien. The trial court shall then determine which expenses were properly incurred to abate violations of the Ypsilanti building and fire codes, and shall exclude these expenses from the lien amount as surplus. All costs properly incurred to abate violations of the Ypsilanti building and fire codes shall be paid out of this surplus, and any remainder left after payment of these expenses shall be disbursed to Kircher.

In Docket Nos. 260970 and 260971, we affirm the trial court's order authorizing Ypsilanti to take possession of, and make necessary repairs to, the apartment building. We also affirm the trial court's order granting contractor's fees, attorney fees, and costs. We affirm the foreclosure proceedings and judgment of foreclosure to the extent that they involved the lien imposed for expenses properly incurred under the state Fire Prevention Code. Finally, we affirm the dismissal of Kircher's counterclaim pursuant to MCR 2.116(C)(8).

We vacate the judgment of foreclosure and invalidate the foreclosure proceedings to the extent that they

involved the collection of expenses incurred solely under the municipal building and fire codes. We remand for the entry of an order terminating Ypsilanti's right to possession and to make necessary repairs at the time of the sheriff's sale, and for the following further proceedings.

On remand, the trial court shall determine whether each expense was incurred (1) to abate a violation of the Fire Prevention Code, or (2) to abate a violation of the Ypsilanti building and fire codes. For expenses falling into the second category, the court shall state with specificity which provision of the city codes authorized the charges. The trial court shall determine which expenses were properly incurred to abate violations of the Fire Prevention Code, and shall include these expenses in the amount of the foreclosed lien. The trial court shall then determine which expenses were properly incurred to abate violations of the Ypsilanti building and fire codes, and shall exclude these expenses from the lien amount as surplus. All costs properly incurred to abate violations of the Ypsilanti building and fire codes shall be paid out of this surplus, and any remainder left after payment of these expenses shall be disbursed to Kircher.

In Docket Nos. 260970 and 260971, we affirm in part, vacate in part, and remand for further proceedings. In Docket Nos. 260972 and 260973, we also affirm in part, vacate in part, and remand for further proceedings. We do not retain jurisdiction.