# STATE OF MICHIGAN

# COURT OF APPEALS

In re POTTER/LONG, Minors.

UNPUBLISHED
December 20, 2018

No. 342731
Wayne Circuit Court
Family Division
LC No. 15-520808-NA

Before: STEPHENS, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. BASIC FACTS

The trial court terminated the respondent's parental rights to four of her minor children, DTP, SMP, AAL, and KML.[1] Two of the children, DTP and AAL, were born with marijuana and cocaine in their systems. Respondent voluntarily placed her three eldest children, DTP, SMP, and AAL, in the care of a guardian at the time of their births because she was addicted to illegal drugs and unable to care for the children. The fourth child, KML, was removed from respondent's care when respondent physically assaulted DTP during supervised parenting-time, in the presence of KML. In addition, respondent physically assaulted, yelled at, and demeaned the minors during other supervised sessions. Respondent admitted that she has a mental-health history that included diagnoses of post-traumatic stress disorder (PTSD), severe anxiety, and depression. While undergoing court-provided therapy and random drug testing, respondent continued her use of marijuana and even tested positively for cocaine, meaning that she had continued to use it even after some of the children had been born with cocaine in their systems.

---

[1] The trial court's subsequent termination of respondent's parental rights to a fifth child is not at issue in this appeal. Furthermore, although the parental rights of the children's fathers were also terminated, the fathers did not appeal from the trial court's ruling and their parental rights likewise are not at issue in this appeal.

-1-

## II. ANALYSIS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). And once a statutory ground for termination of parental rights has been established, the trial court must order the termination of parental rights if the trial court finds by a preponderance of the evidence that termination of parental rights is in the children's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

### A. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the trial court clearly erred in finding that termination of her parental rights to the minor children was proper under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree. This Court reviews for clear error a trial court's factual determination that statutory grounds exist for termination. *In re VanDalen*, 293 Mich App at 139. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court first found that termination of respondent's parental rights to the minor children was proper under MCL 712A.19b(3)(c)(*i*), which states in relevant part as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> \* \* \*
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

There was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Two of respondent's four children, DTP and AAL, were born with marijuana and cocaine in their systems. Respondent admitted that she voluntarily placed three of her children, DTP, SMP, and AAL, in the care of a guardian because she was using illegal drugs and was unable to care for the children. Upon termination of the guardianship by the trial court, respondent admitted that she lacked adequate housing for the children, and she continued to lack adequate housing for them at the time of trial. The trial court removed KML from respondent's care when respondent physically assaulted DTP during supervised parenting-time, in the presence of the other children. At that time, respondent indicated that she wanted to relinquish her parental rights to all four children. The trial court concluded that respondent was

offered a significant number of services over a lengthy period, but respondent failed to benefit from those services. Although respondent participated in several services, her behavior during supervised parenting time included physically assaulting the children, yelling in their faces, and demeaning them. Despite substance-abuse therapy and random drug testing, respondent also continued to use marijuana throughout the pendency of the case and also tested positively for cocaine. Respondent's prior substance abuse problems caused her to place the older children in a guardianship, and her substance abuse issues continued at the time of trial. The trial court specifically noted that respondent lacked steady employment and appropriate housing for the children throughout the life of the case. Even respondent admitted that, under the best-case scenario, it would take an additional six months to one year before the children would be able to return to her care. The trial court also noted that the evidence clearly shows that respondent has not rectified the conditions that led to the adjudication and there is no reasonable expectation that these conditions would be rectified within a reasonable time considering the children's ages. Based on these facts, we conclude that the trial court did not clearly err when it found that statutory grounds existed to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*).[2]

## B. REASONABLE REUNIFICATION SERVICES

Respondent next argues that the trial court clearly erred in terminating her parental rights because the Department of Health and Human Services (DHHS) failed to offer her reasonable services designed to reunify her with the children, specifically, anger management services. We need not reach the merits of this argument because respondent did not properly preserve this issue for appellate review by timely objecting in the trial court. Respondent never requested that the DHHS refer her to anger management services and never objected in the trial court to the DHHS's failure to refer her to such services. "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Furthermore, respondent did not raise this issue in the statement of questions presented in her brief, which results in the issue being abandoned. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008); *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 553; 730 NW2d 481 (2007), citing MCR 7.212(C)(5). Nonetheless, based on our review of the record, we conclude that respondent's argument is without merit.

Respondent argues that she suffered from PTSD, anxiety, and depression, and that the DHHS failed to accommodate her mental health conditions when it failed to refer her to anger management services. We disagree. This Court reviews unpreserved issues for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

---

[2] Because we conclude that the trial court did not clearly err in finding that at least one statutory ground supported termination of respondent's parental rights, we need not address any additional grounds. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

In *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), the Michigan Supreme Court held that the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." As part of those reasonable efforts, the DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. In addition, the DHHS has a duty under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., to make reasonable modifications to its services or programs offered to a disabled parent. *Id*. at 86. Therefore, in a child protective proceeding, the DHHS must "modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Id*.

Respondent's argument that the DHHS failed to offer her reasonable services is simply without merit as the record shows that numerous services were offered to her. Respondent was undergoing substance-abuse therapy at the time of her physical assault of DTP, after which the DHHS transferred respondent to individual therapy with a component of substance-abuse therapy. Respondent participated in those services for a significant period, and her therapist testified at the termination trial that the counseling included efforts to assist respondent in her development of conflict resolution skills. In addition, respondent was offered and participated in several forms of services intended to improve her parenting skills. The DHHS referred respondent to a specialized parenting class designed for parents with children suffering from emotional disturbances, the goal of which was providing respondent with more appropriate interventional coping skills. The trial court found that despite the repeated efforts of the DHHS, respondent failed to benefit from the extensive services offered to her over the two-year life of this case. Accordingly, respondent has failed to demonstrate any plain error that affected her substantial rights..

## C. BEST INTERESTS OF THE CHILDREN

Respondent next argues that the trial court clearly erred in finding that termination of her parental rights was in the children's best interests. We disagree. This Court reviews for clear error the trial court's determination of best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

In making a best-interests determination, the interests of the children, not the parent, are the focus of the best-interest stage of child protective proceedings. *In re Moss*, 301 Mich App at 87-88. In doing so,

> [t]he trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

-4-

When considering best interests, the trial court must focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. The trial court may also consider how long the child has lived in the present home, and the likelihood that she "could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App at 248-249.

In this case, the trial court considered the factors set forth in *In re White*, 303 Mich App at 713-714. Caseworkers testified that the parent-child bond was weak. Respondent's two daughters, SMP and AAL, expressed fear of respondent and stated that they did not want to visit her. SMP submitted a letter to the trial court asking that the trial court not return her to respondent's care. DTP expressed that he would rather live with his father or his foster parents. During parenting-time visits, respondent yelled at the children, called them names, and committed a physical assault against at least one of the children. Respondent received significant services for her parenting abilities, yet failed to benefit from those services, as demonstrated by her conduct during supervised parenting-time visits. Despite receiving two years of services, respondent continued to struggle with housing, employment, mental health, and substance abuse issues. The evidence indicated that the children were flourishing in their foster homes, where they received the services and support that they needed. In light of the weak parent-child bond, the trial court properly considered the children's need for permanency, stability, and finality; the advantages of the children's foster homes over respondent's home; and the possibility of adoption. Accordingly, we hold that the trial court did not clearly err when it found that a preponderance of the evidence showed that termination of respondent's parental rights was in the best interests of the children.

Respondent briefly argues on appeal that the trial court erroneously failed to consider each child's best interests separately. Respondent argues that SMP and AAL were placed together in the same nonrelative foster home and that DTP was placed in a separate nonrelative foster home. Citing the fact that the current caregiver for DTP was not willing to adopt him, respondent argued that he should be returned to her care. Furthermore, respondent argues that KML was in her care for approximately three years, from the date of his birth until December 2016, when the DHHS removed him from respondent's care because of the altercation between respondent and DTP.[3] Respondent argues that this Court should reverse the trial court's order terminating her parental rights to these four children.

This Court has held that the trial court "has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. In *In re White*, this Court examined the holding of *In re Olive/Metts* and explained that "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *In re White*, 303 Mich App at 715. However, this Court cautioned that *In re Olive/Metts* "does not stand for the proposition that the trial court errs if it fails to explicitly make individual and—in many cases—redundant factual findings

---

[3] Respondent does not explain how this difference in the circumstances of the various children supports a conclusion that the trial court clearly erred in finding that termination of respondent's parental rights was in KML's best interests.

concerning each child's best interests." *Id*. at 716. This Court reviews for clear error "whether the trial court failed to address a significant difference between each child's best interests." *Id*.

Unlike the situation before the Court in *In re Olive/Metts*, all the children involved in this case were in nonrelative placement. See *In re Olive/Metts*, 297 Mich App at 43-44. Respondent mentions that SMP and AAL were placed with one caregiver, while DTP was placed with a different caregiver. Respondent fails to mention that KML was placed with the same caregiver as SMP and AAL. The testimony at trial indicated all three of these children were thriving in foster care and that the nonrelative foster-care family was willing to adopt all three children together. Respondent mentions that KML was placed in respondent's care for three years when the older three children were not. Impliedly, respondent is arguing that a stronger parent-child bond existed between KML and respondent, compared to the parent-child bond that existed between respondent and any of the other three children. However, the evidence was clear that respondent continued to use marijuana and cocaine while KML was in her care and respondent lacked stable income, employment, and housing to provide a stable home for him. In addition, it is uncontested that KML was present when respondent assaulted his siblings during supervised parenting time, and respondent treated him in the same manner that she treated his siblings— yelling in his face, demeaning him, and insisting in his presence that the DHHS should take him because she no longer wanted him. Respondent argues that DTP's foster-care family was not willing to adopt him and that he should, therefore, be returned to her care. While it is true that DTP's foster-care family was not willing to adopt him, the foster-care provider informed the DHHS that she was willing to serve as a guardian and that she was willing to provide the child with long-term care if respondent's parental rights were terminated. At the termination trial, DTP's caseworker testified that the child expressed a lot of resentment toward respondent and expressed that he would like to live with his father, and if he could not be placed with his father, he was very comfortable remaining in his foster home. During her own trial testimony, respondent admitted that she physically assaulted DTP during a supervised parenting-time visit, admitted that she lacked the ability to care for any of her children, and estimated that it would take her an additional six months to one year to be in a position where any of the children could return to her care. Based on the facts of this case, we cannot conclude that the trial court clearly erred in failing to address a *significant* difference between KML and his siblings, as no significant difference existed. See *In re White*, 303 Mich App at 716. In its best-interest findings, the trial court did state that "terminating all parental rights is in *each* of the children's best interests" (emphasis added). We conclude that the trial court could have been more explicit in making individual factual findings concerning each child's best interests. However, this Court has held that a trial court does not "err[] if it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *Id*. Because we conclude that the trial court did not clearly err in failing to address any significant difference between the best interests of the four children involved in this case, we affirm the trial court's decision terminating respondent's parental rights to all four children.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel