*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RH, Minor.

UNPUBLISHED
December 14, 2023

No. 365428
Ingham Circuit Court
Family Division
LC No. 21-000960-NA

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent[1] appeals by right the termination of her parental rights to her minor child, RH, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood the child will be harmed if returned to the parent's home). On appeal, respondent argues the trial court erred by terminating her parental rights to RH because petitioner, the Michigan Department of Health and Human Services (DHHS), failed to provide adequate reunification efforts,[2] statutory grounds for termination did not exist, and termination was not in RH's best interests because of the close bond they shared. We affirm.

---

[1] RH's father voluntarily surrendered his parental rights to RH and is not a party to this appeal.

[2] We note the first issue, while addressed by respondent's brief on appeal, was not present in the actual language in respondent's statement of questions presented, and was treated as somewhat of an extension of the issue regarding statutory grounds. Therefore, this issue is, arguably, unpreserved. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 543; 730 NW2d 481 (2007); MCR 7.212(C)(5). However, while the language does not match verbatim, we choose to address this issue because it is necessary for a proper determination of this case, and failure to consider the issue could result in manifest injustice. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010). We also note that respondent did not raise any direct objections on the issue of reunification efforts, but, because respondent did express her belief services were inadequate during the case, and, again, given the importance of the issue, we choose to address it. See *In re Atchley*, 341 Mich App 332, 336-338; 990 NW2d 685 (2022).

## I. FACTUAL AND PROCEDURAL BACKGROUND

RH was born in Texas, but shortly thereafter respondent and RH moved to Michigan, where respondent's family resides. Respondent initially lived with her sister, but moved in with her boyfriend in February 2021, despite his substantial history with Children's Protective Services (CPS).

In October 2021 respondent began experiencing paranoid delusions. Specifically, respondent began to believe she was being "hacked." According to respondent, the hackers took control over, among other things, her computer, phone, washing machine, drier, radios, televisions, and coffee machine. She believed that the hackers also accessed her files, told her that the DEA was coming to her home, told her that her boyfriend was cheating on her, expressed concerns about or threatened RH's safety, and varied between being helpful and hurtful. Eventually, respondent was involuntarily hospitalized, and she placed RH with her sister for the time being. Respondent's sister found RH to be filthy, smelling of urine and feces, in an inappropriately-sized car seat, and with ill-fitting clothes. She believed RH displayed food insecurity, and RH would later be found to be below-average weight for his size.

After being discharged from her involuntary hospitalization, respondent disappeared with RH for a few days, ostensibly to escape the hackers she described. This brought her to the attention of CPS. Respondent was somewhat compliant with CPS at first, and voluntarily submitted to drug tests, which were positive for methamphetamines. Respondent initially agreed to "a very open ended [sic] safety plan" for RH, but later determined she no longer wished to participate in the plan, and DHHS initiated the instant case.

During the proceedings, respondent was repeatedly instructed to stop using methamphetamines and stop living with her boyfriend. Respondent failed to comply with either instruction. It was never in doubt that respondent loved RH and shared a bond with him. Indeed, her participation in parenting time was generally regarded as appropriate. However, respondent suffered from a lack of stable housing, a lack of transportation, and a persistent inability to gain insight into her mental health problems. Respondent's caseworker was in frequent contact with her, though respondent frequently failed to respond. The caseworker repeatedly provided respondent with lists of services, sometimes even arranging appointments or participating in three-way calls with respondent. Respondent's therapists were often unable to provide therapeutic services for respondent's mental health and substance abuse issues because they had to focus on the more basic instabilities in respondent's life. Respondent was repeatedly given suggestions for shelters that would give her priority placement for housing, how to obtain employment, and, sometimes, her caseworker or therapists would personally provide respondent with transportation. However, respondent frequently refused outright, failed to appear at follow-up appointments, and eventually unilaterally decided to discontinue participating in parenting time.

Medical professionals agreed respondent displayed little insight into her psychological problems and remedying those problems would require full commitment to treatment, in which respondent was not interested. Although respondent frequently stayed in other locations, she never separated from or moved away from her boyfriend, and she continued using methamphetamines. Later in the case, respondent was hospitalized a second time, again related to her paranoid delusions. Meanwhile, RH was happy, healthy, and strongly bonded to his foster placement.

The trial court ultimately terminated respondent's parental rights, noting that, while it was "abundantly clear [respondent] loves her son," she failed to adequately address her mental health, and while respondent did argue there could have been additional accommodations made because of her mental illness, respondent never requested such accommodations. The trial court found DHHS provided adequate services on the basis of respondent's mental health evaluation, but respondent "did not avail herself of those services consistently except for visitation." The trial court concluded respondent had not meaningfully participated in and benefited from the plans crafted to help her, so she had not demonstrated that she could properly parent RH, or that RH would be safe in her care, and there was no reasonable likelihood she could do so in a reasonable time. While the trial court recognized respondent's bond with RH, it also recognized the bond had diminished over the duration of the case because respondent unilaterally stopped attending parenting times. Furthermore, the fact that the parenting times respondent did attend were appropriate was not enough to justify returning RH to her care. Respondent now appeals.

## II. ANALYSIS

### A. REUNIFICATION EFFORTS

Respondent argues DHHS failed to make reasonable efforts toward reunification. We disagree.[3]

In the absence of aggravating circumstances, DHHS must make reasonable efforts to reunify a child with the family in all cases. *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022). While DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). A respondent's choice to refuse recommendations cannot be attributed to DHHS. See *In re Sanborn*, 337 Mich App 252, 267; 976 NW2d 44 (2021).

Respondent consistently failed to make any meaningful efforts to refrain from using methamphetamines, despite being repeatedly told she needed to desist. Furthermore, one expert involved in respondent's care believed respondent's psychosis might dissipate if she discontinued using methamphetamines, which was respondent's other primary barrier to reunification. As the trial court noted, respondent only provided excuses: she made a doubtful claim that she was told she needed an active drug problem to be accepted into a substance abuse program, or claimed she needed methamphetamines to self-medicate. The experts involved in this case believed respondent had no insight into her problems and was only participating in treatment because she believed it was a condition to get RH back, rather than because she understood that she needed treatment. Despite the overwhelming efforts of her providers and caseworker to help her, including personally offering to transport respondent and make appointments for her, respondent not only failed to keep

---

[3] The question of whether DHHS made reasonable efforts at reunification is generally reviewed for clear error. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701; 709-710; 846 NW2d 61 (2014).

appointments, she failed to communicate with both her caseworker and her counsel. None of the testimony suggested DHHS was unwilling to offer respondent additional services. Instead, the record indicates that respondent's challenges were so fundamental that her providers were unable to provide meaningful therapy—either because respondent's life needed to be stabilized first, or because respondent simply refused to show up. Respondent even unilaterally decided to stop appearing for parenting time visits.

The only specific services respondent identifies on appeal as lacking concerned testing or treatment for ADHD. However, her primary care provider testified he was treating respondent's ADHD, and another provider recognized that, while respondent had an ADHD diagnosis, it would not substantially affect her parenting, and recommended against amphetamine-based treatment. Furthermore, the psychiatrist respondent saw after her second hospitalization was willing to continue her treatment with a drug that was also used to treat ADHD symptoms, but respondent refused the psychiatrist's services because the psychiatrist refused to continue all of the medications provided by the hospital. This psychiatrist also opined ADHD was not respondent's primary concern. Therefore, respondent's ADHD was at least being partially treated and was not a significant problem for respondent in the scope of her other issues. Respondent chose to forgo not only treatment for her ADHD, but also all treatment, because of her unwillingness to work with the new psychiatrist. Respondent's failure to identify any other services DHHS should or could have provided, or how any such services would help her, is insufficient to support her claim of error. See *In re Sanborn*, 337 Mich App at 267.

## B. STATUTORY GROUNDS

Respondent provides no argument on appeal specifically relevant to any statutory ground for termination, which may constitute abandonment of the issue. *In re JS and SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000). Regardless, to the extent respondent generally argues that there was no evidence she neglected or endangered RH, we disagree.[4]

RH was filthy and potentially malnourished when respondent was first hospitalized, and the evidence showed that respondent never gained any insight into her actual problems. Given respondent's situation and mental health, her failure to participate consistently in services and to benefit from those services constitutes direct evidence that RH would be harmed if returned to her care. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018). Furthermore, respondent consistently chose methamphetamines and her boyfriend over RH despite repeated admonitions and opportunities to engage in treatment, and refused to pursue alternative housing or employment. A respondent's choice to maintain a relationship with someone known to be inappropriate for the child calls "into question respondent's ability to provide proper care and custody." *In re Smith-Taylor*, 339 Mich App 189, 204;

---

[4] "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *White*, 303 Mich App at 709 (footnote and citations omitted); MCR 3.977(K). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *White*, 303 Mich App at 709-710. "The interpretation and application of statutes and court rules are [] reviewed de novo." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

981 NW2d 511 (2021), rev'd on other grounds 509 Mich 935 (2022). To the limited extent respondent challenges the trial court's findings regarding statutory grounds for termination, the evidence in the record amply supports those findings. We decline to undertake any further analysis of the trial court's specific findings regarding statutory grounds, because plaintiff has failed to raise any specific challenges on appeal. *JS and SM*, 231 Mich App at 98.

## C. BEST INTERESTS

Respondent lastly argues that termination was not in RH's best interests because she had a bond with RH. We disagree.[5]

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance Minors*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014); MCL 712A.19b(5). "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks and citation omitted, alteration in original). "Best interests are determined on the basis of the preponderance of the evidence." *LaFrance*, 306 Mich App at 733. Considerations of the best interests of the child include:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701; 713-714; 846 NW2d 61 (2014) (quotation marks, footnotes, and citations omitted).]

"The trial court should weigh all the evidence available to determine the child[]'s best interests." *Id.* at 713.

The fact that respondent loved and had a bond with RH was never in any real doubt, although respondent was responsible for diminishing that bond by choosing to forgo further parenting time visits. As noted above, however, the child's bond with the parent is but one factor the trial court may consider when determining the best interests of the child. *Id.* at 713-714. While this bond may weigh against termination, the other factors for the trial court to consider in this case overwhelmingly support termination. Again, respondent consistently chose methamphetamines and her boyfriend over RH, and she never seriously engaged in any services other than the parenting coach program. Respondent also elected to unilaterally discontinue her parenting time visits. Finally, the evidence indicates RH was happy, strongly bonded, and well-

---

[5] This Court reviews a trial court's determination regarding best interests for clear error. *White*, 303 Mich App at 713. "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id.* at 709-710.

cared for in his foster placement.  We discern no clear error in the trial court's finding that termination was in RH's best interests.

## III.  CONCLUSION

Because there is no evidence the trial court erred by terminating respondent's parental rights, we affirm.


/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates