*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. M. GILL, Minor.

UNPUBLISHED
March 06, 2026
2:44 PM

No. 373716
Wayne Circuit Court
Family Division
LC No. 2024-000259-NA

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals by right the order terminating his parental rights to the minor child KMG under MCL 712A.19b(3)(h) (parent imprisoned for such a time that the child will be deprived of a normal home for a period exceeding two years, and the parent has not provided for the child's proper care and custody). Respondent argues that the trial court erred in terminating his parental rights because termination was not in the best interests of KMG. We affirm.

## I. BACKGROUND

This appeal involves the termination of respondent's parental rights to KMG during respondent's incarceration. Respondent pleaded guilty to second-degree murder, MCL 750.317, and carrying a firearm during the commission of a felony, MCL 750.227b, in August 2022. Respondent was sentenced to a term of 18 to 30 years' imprisonment, and his earliest release date is March 7, 2042.

Respondent was incarcerated when KMG was born, and he has never had physical care or custody of KMG. Accordingly, the events that led petitioner to initiate the instant removal proceedings do not relate to the conduct of respondent, but rather the conduct of KMG's mother, KF. In October 2023, KMG was evaluated by the Child Adverse Evaluation Team at Children's Hospital. His medical team determined that he had multiple fractured bones in various stages of

-1-

healing, and that the injuries were consistent with nonaccidental trauma. Petitioner filed the instant action to terminate both respondent's and KF's parental rights at the initial disposition.[1]

Following the adjudication trial, Referee Lisa Winer found that there was a basis to establish jurisdiction over KMG, and that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(h). The trial court entered an order adopting those decisions.

Next, Referee Winer conducted a best-interest hearing. Kaitlynn Martinez, the foster-care worker who worked with the family, testified that KMG was placed in a licensed foster-care home together with his younger brother and that they were "thriving" and "doing phenomenal." Respondent's mother indicated that she was interested in taking both children, but she did not have the ability to do so until later, so she was being investigated for a possible placement at a later date. Martinez also testified that respondent had not been offered any visitation or virtual visits with KMG and that she did not know of any birthday cards, letters, or pictures that respondent had sent KMG. KF also testified. As it relates to respondent, KF opined that respondent loved his son, and "he is a good dad in jail." KF said that respondent was in contact with KMG through other people, primarily respondent's mother.

Referee Winer ultimately found that it would be in KMG's best interests to terminate respondent's parental rights on the basis that respondent would be incarcerated until long after KMG reached the age of majority. Further, Referee Winer found that there was no evidence that respondent had a strong bond with KMG or had supported KMG. The trial court later issued a written order adopting Referee Winer's findings and terminating respondent's parental rights. This appeal followed.

## II. BEST-INTEREST DETERMINATION

### A. LEGAL PRINCIPLES

"We review for clear error the trial court's determination of best interests." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. (quotation marks and citation omitted). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Id*. (quotation marks and citation omitted).

Before a trial court may terminate parental rights, the court is required to find by a preponderance of the evidence that termination is in the child's best interests. *Id*. "Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661

---

[1] KF's parental rights to KMG and KMG's half-brother were also terminated as a result of these proceedings. KF is not a party to the present appeal.

NW2d 216 (2003). However, "the focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

"In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). A number of factors may be relevant to the court's best-interest determination, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (quotation marks and citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019). Further, the court may consider the expert testimony of witnesses like psychologists, therapists, and caseworkers. *In re Conley*, 216 Mich App 41, 44; 549 NW2d 353 (1996).

An incarcerated parent may provide proper care and custody for his or her child by having the child placed with a relative during the parent's incarceration. *In re Sanders*, 495 Mich 394, 421; 852 NW2d 524 (2014). However, the trial court is permitted to consider the length of a parent's incarceration when determining whether termination of parental rights is in the child's best interests. See *In re Jenks*, 281 Mich App 514, 519; 760 NW2d 297 (2008).

## B. ANALYSIS

As previously noted, the trial court found a statutory ground to terminate respondent's parental rights under MCL 712A.19b(3)(h). Respondent does not challenge the sufficiency of the court's statutory-grounds determination on appeal.[2]

Regarding KMG's best interests, the referee's reasoning was sparse. The only considerations that the referee highlighted were respondent's lengthy prison sentence, his lack of support for KMG, and the absence of a strong bond between respondent and KMG. However, given the situation, there were necessarily few facts to consider when addressing whether termination of respondent's parental rights was in KMG's best interests because respondent had been in prison KMG's entire life.

Additionally, the considerations highlighted by the referee were supported by the record. The record demonstrated that KMG had never been in respondent's care or custody because respondent was incarcerated when KMG was born. Further, during the events of the case, respondent did not have any formal visitation or interaction with KMG. Nor was there any

---

[2] We note that the record would support such a challenge, given that the DHHS sought termination of respondent's parental rights solely because of his incarceration, which requires more than establishing a "mere present inability to personally care for one's children . . . ." *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010). However, respondent failed to include this issue in his statement of the questions presented on appeal, so we treat this issue as waived. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 543; 730 NW2d 481 (2007).

testimony that respondent financially provided for KMG or made arrangements for his care during the time he was incarcerated. Consequently, respondent's total lack of history caring for KMG suggested that even if he were to be released during KMG's childhood, he had not demonstrated he had the ability to do so.

The court was also permitted to consider the fact that respondent's earliest release date is after KMG reaches legal adulthood. See *Jenks*, 281 Mich App at 519. This makes physical custody an impossibility. The court heard evidence that KMG could potentially find stability and permanence through adoption. At the time of the best-interest hearing, KMG was two-and-a-half years old, and he had been moved three times. He was thriving in the care of a foster parent, and the foster parent had expressed a willingness to adopt both KMG and his younger brother. Both boys called their foster parent "mom," and had a "very good connection" with her. Consequently, the record evidence suggests that KMG's need for permanency and stability would best be achieved through the termination of respondent's parental rights so that his foster family had the option to make their relationship permanent through the adoption process.

Respondent contends that the trial court erred by not adequately weighing the evidence of a bond between respondent and KMG. During the best-interest hearing, KF testified that respondent loves his son, and that he contacts KMG through respondent's mother. So the court did hear evidence of a bond between respondent and KMG, which weighed against termination. But the other factors that the court considered, such as respondent's limited ability to care for KMG and the advantages of KMG's foster-care placement, weighed in favor of termination. At this point, KMG's need for permanency, stability, and finality with his foster placement is paramount. See *In re Atchley*, 341 Mich App 332, 347-348; 990 NW2d 685 (2022) (affirming the trial court's termination of parental rights when the child was "doing better in foster care and her need for stability and permanency weighed in favor of termination").

Finally, respondent argues that the court erred by not considering the fact that his mother was being evaluated as a possible placement for KMG, which would have weighed against termination. "A child's placement with relatives is a factor that the trial court is required to consider." *Id*. at 347 (citation and quotation marks omitted). Here, however, the record demonstrates that KMG *was not* placed with a relative, nor was there a definite plan to place him with a relative. KMG was removed from his mother's care in February 2024. Eight months later, at the best-interest hearing, KMG's foster-care worker testified that respondent's mother was being investigated as a possible placement for KMG and his younger brother, but she would be unable to take the boys until the end of December 2024. Because this was more than 30 days away, the agency was not yet able to investigate whether she would be a suitable placement for the boys.

In sum, at the time of the best-interest hearing, KMG had been waiting eight months for his father to provide for his custody and care. Any placement with respondent's mother was still theoretical as of the date of the best-interest hearing. KMG was entitled to stability, permanency, and finality, and he was receiving that stability with his foster family. See *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011) (affirming the termination of parental rights when "[t]he children had been placed in a stable home where they were thriving and progressing and that could provide them continued stability and permanency given the foster parents' desire to adopt them").

Accordingly, the record included sufficient evidence for the trial court to conclude that the termination of respondent's parental rights was in KMG's best interests, and the court's decision was not clearly erroneous.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock